Lucy C. IFILL, Appellant,

v.

DISTRICT OF COLUMBIA,
et al., Appellees.

Nos. 92–CV–210, 92–CV–491, 92–
CV–981 and 92–CV–1393.

District of Columbia Court of Appeals.

Argued June 1, 1995.

Decided Sept. 7, 1995.

A. Palmer Ifill, for appellant.

Martin B. White, Assistant Corporation Counsel, with whom Garland Pinkston, Acting Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellees.

Before FERREN and KING, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

Before us are four consolidated appeals related to three separately filed complaints in which appellant, Lucy C. Ifill, alleged violations of 42 U.S.C. § 1983. Ifill alleged that she was the victim of a pattern of harassment by various of the appellees, the District of Columbia, the Superintendent of Schools, a school principal and other school system employees, in violation of her First Amendment right to express her views on issues of "public concern." Ifill's main contentions on appeal are: (1) the trial court erred in granting appellees' motion for summary judgment on her first complaint, thereby denying her request for declaratory and injunctive relief; (2) the trial court erred in granting appellees' motion for summary judgment on appellant's subsequent complaint seeking damages based upon *res judicata* resulting from the judgment in the injunction suit because the District had waived this defense by failing to object to claim-splitting in a timely manner; and (3) the trial court erred in dismissing appellant's third complaint for failure to exhaust administrative remedies. We affirm.

## I.

On December 6, 1991, Ifill, a special education teacher in a D.C. public school, filed a complaint pursuant to 42 U.S.C. § 1983, seeking only declaratory and injunctive relief against the District and a number of officials and employees of the D.C. public school system. In this complaint, Ifill alleged that she had been subjected to a "campaign of harassment" because of letters she had written complaining about the overcrowding in her classroom. Initially, she attributed the overcrowding to the principal's failure to hire a replacement teacher. After a new teacher was hired, Ifill complained about the proposal to partition her classroom and the ultimate decision to have the new teacher share Ifill's classroom without a partition. Ifill also claimed that the increase of students as a result of the shared classroom was a fire and safety hazard.

Ifill filed an application for a preliminary injunction to preclude school officials from convening a job rating interview with her in the absence of her lawyer. Her appeal from the denial of that application is the first of the four appeals before us, 92–CV–210.[1] On April 20, 1992, the trial court granted appellees' motion for summary judgment and denied Ifill's request for declaratory and permanent injunctive relief. It was from this order that Ifill took her second appeal, 92–CV–491.

On January 28, 1992, prior to the denial of her request for permanent injunctive relief, Ifill filed a second § 1983 complaint based on the same facts, this time seeking to recover damages. On November 12, 1992, the trial court dismissed this complaint with prejudice and granted appellees' motion for summary judgment because of the *res judicata* effect of the trial court's April 20, 1992, order. Ifill takes her appeal in 92–CV–1393 from this order.

On June 18, 1992, Ifill filed a third § 1983 complaint seeking, as in her first complaint, only declaratory and injunctive relief. Ifill alleged that she was still being subjected to

abuse and harassment. The incident that triggered this complaint occurred during the special education students' annual testing period. Ifill hand-delivered a letter to the director of the special education center complaining about the lack of cooperation she was receiving during the testing period from other teachers, and the public humiliation inflicted upon her by the principal by calling Ifill into her office via the public address system. Ifill further alleged that her two-day suspension for insubordination resulting from her failure to appear in the principal's office was part of the continuing retaliation against her by appellees and, thus, the grounds for her suspension were completely false. Initially, Ifill's suspension was temporarily restrained by an order entered by the trial court on June 14, 1992. However, the trial court ultimately dismissed her complaint during a hearing on August 13, 1992, on the ground of failure to exhaust administrative remedies. From this order of dismissal Ifill takes her appeal in 92–CV–981.

## II.

Injunctive relief is committed to the sound discretion of the trial court, and this court will not disturb the denial of either preliminary or permanent injunctive relief absent an abuse of discretion. *In re Antioch Univ.*, 418 A.2d 105, 109 (D.C.1980); *Wagner v. Taylor*, 266 U.S.App.D.C. 402, 411–12, 836 F.2d 566, 575–76 (1987); *National Ass'n of Greeting Card Publishers v. United States Postal Serv.*, 186 U.S.App.D.C. 331, 363, 569 F.2d 570, 602 (1976), *vacated in part on other grounds sub. nom., United States Postal Serv. v. Associated Third Class Mail Users*, 434 U.S. 884, 98 S.Ct. 253, 54 L.Ed.2d 169 (1977); *see also* 11A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 2942 (1995). In determining whether a preliminary injunction is appropriate, the trial court must take into consideration four factors: "(1) likelihood of irreparable harm in the absence of a preliminary injunction; (2) likelihood of success on the merits in the

---

1. The order from which Ifill took her first appeal was not included in the record on appeal. However, the issues raised in appellant's first appeal are subsumed within appellant's second appeal, and thus, are adequately illustrated and resolved by the trial court's order entered on April 20, 1992, denying injunctive relief to Ifill.

underlying cause of action; (3) [whether] the "balance of injuries" favors granting an injunction; and (4) [whether] the public interest would be served by granting the injunctive relief sought." *Antioch, supra,* 418 A.2d at 109. A permanent injunction, however, requires the trial court to find that "there is no adequate remedy at law, ... the balance of equities favors the moving party, and ... success on the merits has been demonstrated." 43A C.J.S. *Injunctions* § 16 (1978); *Universal Shipping Co. v. United States,* 652 F.Supp. 668, 675–76 (D.D.C.1987) (holding that the "[c]ourt must look at the interests of the parties who might be affected by the [injunction] and must also examine whether the facts and the relevant law indicate that an injunction clearly should be granted or denied apart from any countervailing interest").

■ In a comprehensive order ruling upon the defendants' motion to dismiss or for summary judgment, Judge Long explained her conclusion that Ifill was not entitled to the declaratory or injunctive relief sought in her first complaint, because she was unlikely to succeed on the merits. Although Judge Long analyzed Ifill's claims using the test for preliminary injunctive relief, she considered the motion one for summary judgment,[2] and her analysis is relevant to the imposition *vel non* of permanent injunctive relief.[3]

Judge Long began her analysis by clearly and correctly stating that Ifill was not required to exhaust her administrative remedies prior to filing suit pursuant to § 1983. *See Roache v. District of Columbia,* 654 A.2d

1283, 1284 (D.C.1995) (reversing trial court's dismissal of a § 1983 action for failure to exhaust administrative remedies); *Miller v. District of Columbia,* 587 A.2d 213, 215 (D.C. 1991).[4]

Judge Long then discussed whether preliminary injunctive relief was appropriate. On the issue of likelihood of prevailing on the merits, Judge Long found that "no evidence has been produced that would prove the Superintendent [ ] or the Board of Education have taken any action to thwart the First Amendment rights of the plaintiff. The Board has done nothing at all, as no administrative complaint was ever initiated. The Superintendent has taken no official action against [Ifill]." Thus, Judge Long concluded that there was no evidence of conduct by the Superintendent or Board offensive to the Constitution.

■ With respect to the individual defendants, the court also found that "there [was] no evidence in this record that the individual defendants took their actions against the plaintiff 'under color of law' or pursuant to a government policy." Judge Long found that any actions, assuming they were proven, were "a peevish, personal frolic," and not an action accountable under 42 U.S.C. § 1983.

42 U.S.C. § 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen ... to the depriva-

---

2. When reviewing a grant of summary judgment, this court conducts an independent review of the record and views the facts in the light most favorable to the non-moving party, bearing in mind that once the moving party makes the initial showing that there are no material issues of fact in dispute, the burden shifts to the non-moving party to demonstrate that there is a genuine issue for trial. *Townsend v. Waldo,* 640 A.2d 185, 187 (D.C.1994).

3. This same analysis allows us to conclude that the trial court did not err in denying Ifill's request for a preliminary injunction which formed the basis for Ifill's first appeal, 92–CV–210.

4. Ifill argued that Judge Long abused her discretion by relying on Ifill's failure to exhaust her administrative remedies when denying injunctive

relief. Judge Long concluded that Ifill's failure to exhaust or even pursue any nonjudicial avenues of relief that could have provided adequate relief, and Ifill's failure to show that such avenues of relief were unavailable and/or inadequate, weighed against awarding her the equitable relief she sought in court. We decline to hold that this constituted an abuse of discretion. *See Johnson v. United States,* 398 A.2d 354, 361–62 (D.C.1979). Judge Long merely considered the alternative administrative remedies available to Ifill when deciding whether injunctive relief was appropriate. Judge Long correctly stated that "[w]hile the mere existence of such remedies does not preclude the filing of a § 1983 action, it is prudent not to grant injunctive relief if there is no pressing, concrete reason to believe that such an extraordinary remedy is the only way in which to provide redress to the plaintiff."

tion of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress ...

Municipalities and other local government units may properly be sued for monetary, declaratory, or injunctive relief under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Serv.,* 436 U.S. 658, 690 (1978); *see Dant v. District of Columbia,* 264 U.S.App. D.C. 284, 291–92, 829 F.2d 69, 76 (1987). We sustain Judge Long's findings that the Superintendent and the Board of Education did not institute a policy or any type of action adverse to Ifill, and thus she could not prevail against them in her § 1983 action. For the same reason, summary judgment for the District of Columbia was also appropriate.

 *Monell* also held that "local government officials sued in their official capacities are 'persons' under § 1983 in those cases in which ... a local government would be suable in its own name." *Monell, supra,* 436 U.S. at 690 n. 55, 98 S.Ct. at 2036 n. 55. With respect to the individual defendants, Ifill's complaint alleged that the principal and assistant principal began a campaign of harassment which included: (1) using loud boisterous language and gestures to humiliate Ifill in the presence of others; (2) raising their voices and shouting at Ifill in front of others; (3) speaking ill of her to other teachers and colleagues; and (4) encouraging teachers to file complaints "in an attempt to manufacture witnesses were there to be a hearing." Moreover, Ifill alleged that the principal: (1) attempted to persuade the PTA president to file charges against Ifill and ultimately suspend her from teaching, and (2) gave Ifill poor ratings despite her superior qualifications in order to punish her for writing letters to the Superintendent and School Board. Ifill failed to state a claim against the guidance counselor, Johnny Lowe, how-

ever, and did not allege any actions by him in the complaint except for a passing reference that "the [Superintendent and School Board] were made aware of the abusive attitude and conduct of the defendant principal, assistant principal, and Johnny Lowe towards the plaintiff ... and ... have neglected and failed to prevent the same." This is not enough to allege that Lowe deprived Ifill of a constitutional right "under color of law." [5]

 Ifill does, however, allege that the principal evaluated her unfairly in order to punish her and that both the principal and assistant principal instituted a campaign of harassment involving other employees of the school in retaliation for the letters Ifill sent to the Superintendent and School Board. Because the principal and the assistant principal are in a position to deprive Ifill of a constitutional right "under color of any statute, ordinance, regulation, custom, or usage...." we conclude that Judge Long's granting of summary judgment on the § 1983 claim with respect to them on the basis she stated—that any actions they had taken were a "peevish personal frolic"—was unwarranted. *See Lipsett v. University of Puerto Rico,* 759 F.Supp. 40, 50 (D.P.R.1991) (one acts under color of state law when exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law," quoting *United States v. Classic,* 313 U.S. 299, 325–26, 61 S.Ct. 1031, 1042–43, 85 L.Ed. 1368 (1941)). Therefore, we will evaluate *de novo* the merits of the § 1983 claim to determine whether the principal and assistant principal were entitled to summary judgment on Ifill's allegation that they deprived her of her claimed First Amendment rights.

 Ifill contends specifically that the trial court erred in denying her injunctive relief without analyzing her First Amendment claims within the context of the "public concern" standard set forth by the Supreme Court in *Pickering v. Board of Educ.,* 391

---

5. While Judge Long stated that she was granting summary judgment for the "individual defendants," it is clear that Ifill failed to state a claim against Lowe as required by Super.Ct.Civ.R. 12(b)(6). Ifill's claim against Lowe in any event would have resulted in a summary judgment as well, for the same reasons stated with regard to the others, *see infra* pp. 190–193.

U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). In *Pickering*, a public school dismissed a school teacher because he sent a letter to a local newspaper criticizing the way the school board and the superintendent handled past proposals to raise revenue for the school. The Supreme Court held that a public employee must be able to speak freely on matters of public concern without fear of retaliation. The Court emphasized that "statements by public officials on matters of public concern must be accorded First Amendment protection despite the fact that the statements are directed at their nominal superiors." *Pickering, supra,* 391 U.S. at 574, 88 S.Ct. at 1737.

■ In *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the Supreme Court further explained what constitutes speech on matters of public concern. *Connick* involved the termination of an Assistant District Attorney after she circulated a questionnaire to other attorneys in the office concerning office transfer policies and other work-related issues. The Court concluded that, except in one particular question, the questionnaire did not contain matters of public concern and thus the speech was not constitutionally protected.[6] The Court emphasized that "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick, supra,* 461 U.S. at 148, 103 S.Ct. at 1691. To determine whether the speech is a matter of public concern, the court must examine the content, form, and context of the speech at issue.[7] *Id.* at 147–48, 103 S.Ct. at 1690–91.

"To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed to a public official—would plant the seed of a constitutional case." *Id.* at 149, 103 S.Ct. at 1691.

Finally, the Supreme Court found in *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987), that a public employee's comment "if they go for him again, I hope they get him," referring to the assassination attempt on President Reagan, was speech on a matter of public concern. The Court emphasized the context in which the remark was made, and concluded that the employee was commenting on the policies of the Reagan Administration. "'Just as erroneous statements must be protected to give freedom of expression the breathing space it needs to survive, so statements criticizing public policy and the implementation of it must be similarly protected.'" *Rankin, supra,* 483 U.S. at 387, 107 S.Ct. at 2898 (quoting *Bond v. Floyd,* 385 U.S. 116, 136, 87 S.Ct. 339, 349, 17 L.Ed.2d 235 (1966)).

This argument does not further Ifill's claim that the principal and assistant principal deprived her of her First Amendment rights, however, because Ifill was not speaking out "as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest."[8] *See Connick, supra,* 461 U.S. at 147, 103 S.Ct. at 1690. Thus, her expression is not entitled to the First Amendment protection articulated in *Pickering, Connick,* and *Rankin.*

It is clear from the pleadings and related affidavits that all of Ifill's complaints discussed above are best characterized as an employee grievance based upon her disagreement with certain administrative decisions

---

**6.** The Court found one question to be a matter of public concern and balanced the interests of the employee and the employer before concluding that the question "carrie[d] the clear potential for undermining office relations" and thus was not protected under the First Amendment. *Connick, supra,* 461 U.S. at 152, 103 S.Ct. at 1692.

**7.** "The inquiry into the protected status of speech is one of law, not fact." *Connick, supra,* 461 U.S. at 148 & n. 7, 103 S.Ct. at 1690 & n. 7; *see*

*Ferrara v. Mills,* 781 F.2d 1508, 1515 (11th Cir. 1986).

**8.** We need not address the *Pickering, Connick,* and *Rankin, supra,* analysis with respect to the Superintendent or the Board of Education because, as Judge Long found, "no evidence has been produced that would prove that the Superintendent [ ] or the Board of Education have taken any action to thwart the First Amendment rights of [Ifill]...." *Supra* pp. 189–190.

made by the principal affecting her immediate work environment. The record contains ten letters written by Ifill and her attorney to the Superintendent of Schools, the Mayor of the District of Columbia, and the President of the D.C. School Board, in which she expresses her dissatisfaction with the partition of her classroom and overcrowding of her work environment, and describes the subsequent harassment that ensued. In three of the letters, Ifill claimed that the overcrowding of her classroom constituted a fire and safety hazard. Ifill's comments, however, were not criticisms of public policy. Ifill was merely dissatisfied, initially, with the fact that another special education teacher was not being hired, and, later, with the fact that she had to share her classroom with another special education teacher.

Ifill's communications with school personnel dealt with her private employee grievances rather than with a matter of public concern. The circumstances surrounding her speech are similar to those in other recent federal appellate cases in which the courts have denied First Amendment protection. For example, in *Hartman v. Board of Trustees of Community College Dist. No. 508*, 4 F.3d 465, 471–72 (7th Cir.1993), a special assistant to the Chicago City Colleges Chancellor alleged that the Chancellor sexually harassed her when he asked her to "help him obtain sexual favors from other women, including other City Colleges employees, calling it a privilege of his position." *Hartman, supra*, 4 F.3d at 468–69. The plaintiff claimed that after she told him that the requests were "an abuse of power" and would get him "in a lot of trouble," the Chancellor retaliated against her by placing her on administrative leave, eliminating her position, and returning her to her previous inferior position as a tenured faculty member.

■ The circuit court ruled that her allegations of sexual harassment did not deal with a matter of public concern, noting that "even if an issue is one of public concern in a general sense, as sexual harassment surely is, … we must ask whether the speaker raised the issue *because* it is a matter of public concern or whether, instead, the issue

was raised to 'further some purely private interest.'" *Hartman, supra*, 4 F.3d at 471 (citation omitted). Thus, if the overriding reason for the speech is related to the speaker's personal interests, a passing reference to a public concern will not transform a private employee grievance into a matter of public concern. *Id.; see Cliff v. Board of School Comm'rs*, 42 F.3d 403, 409–11 (7th Cir.1994) (teacher's complaints about size of math classes and general disorder of school not a matter of public concern because teacher made these complaints to support her claim that her poor teaching evaluations were unwarranted); *Pearson v. Macon–Bibb County Hosp. Auth.*, 952 F.2d 1274, 1278–79 (11th Cir.1992) (senior staff nurse's complaints about operating room nurses' performance of cleaning responsibilities related to personal matter even though remarks touched on conditions that might be potentially hazardous to patients); *Ezekwo v. New York City Health & Hosps. Corp.*, 940 F.2d 775, 780–81 (2d Cir.1991) (medical resident's complaints of racial and gender discrimination which allegedly resulted in her not being appointed chief resident were not matters of public concern; "the mere fact that one or two of [her] comments could be construed broadly to implicate matters of public concern does not alter the general nature of her statements"); *Barnes v. Small*, 268 U.S.App.D.C. 265, 275–77, 840 F.2d 972, 982–84 (1988) (concluding that letters from civilian employee of Department of the Army, acting in his capacity as president of the local union, alleging misconduct of officials during personnel proceedings against union members, were not protected under First Amendment; the "letters addressed only the misbehavior of other employees in his office, and not matters relating to any broader public interest…."); *Murray v. Gardner*, 239 U.S.App.D.C. 212, 216, 741 F.2d 434, 438 (1984) (refusing to find FBI agent's speech a matter of public concern merely because public monies and government efficiency are involved; "the role of a whistle-blower merits protection; the expressions of personal dissatisfaction by a discontented employee do not"); *See also Fox v. District of Columbia*, 877 F.Supp. 6, 7 (D.D.C.1995) (report to police by director of security that money was missing from D.C.

Lottery Board not matter of public concern because employee not speaking out as whistleblower against anybody but rather in routine of his job); *Wadud v. Willsie*, 735 F.Supp. 1488, 1494–95 (D.Kan.1989) (psychiatrist's criticisms about new hospital policy curtailing employees' private practice not a matter of public concern regardless of argument that such policy will decrease standard of care at hospital).

Moreover, this case is unlike those in which courts have protected a public employee's speech because it dealt with a matter of public concern. In *Zamboni v. Stamler*, 847 F.2d 73 (3d Cir.1988), a detective privately expressed his dissatisfaction with the new promotion procedures with the head prosecutor. After being denied a promotion, transferred from a supervisory position to a non-supervisory one, and subjected to numerous disciplinary actions in retaliation for his criticisms, the detective wrote a letter to the Civil Service Commission stating that the prosecutor was evading civil service provisions. He then brought a § 1983 action. The circuit court found that the employee's speech, which dealt with the alleged circumvention of civil service laws by shifting an entire category of employees into unprotected positions, was a matter of public concern. The speech raised significant issues concerning whether the prosecutor properly performed his administrative functions. The court summarized its position by noting, somewhat broadly, that "public employees' criticism of the internal operations of their places of public employment is a matter of public concern." *Zamboni, supra*, 847 F.2d at 77.

Similarly, in *Tao v. Freeh*, 307 U.S.App. D.C. 185, 27 F.3d 635 (1994), the court found that a language specialist at the Federal Bureau of Investigation, who alleged racial discrimination after being denied a promotion, was entitled to First Amendment protection. Upon the denial of a promotion, the employee in *Tao*, who is an American citizen of Chinese descent, filed an administrative appeal alleging that the denial was arbitrary and capricious. In addition, she claimed to be the victim of racial discrimination. Unlike the treatment of other employees who were denied promotions, Tao never received a reassessment of her work submitted with her application, and her employer informed her that she must submit the lengthy application for a second time in order to be considered again. The court found that a requirement of many additional hours to resubmit a lengthy promotion application constituted an "adverse action" sufficient to implicate First Amendment concerns. The court also found that her speech, alleging that the denial of her promotion was due to racial discrimination, was protected under the First Amendment because it dealt with a matter of public concern. The court stated that:

> [although] an individual personnel dispute does not generally constitute a matter of public concern, an employee's speech aimed at resolving a personnel dispute may touch upon an issue of public concern ... The statement [in this case] is broader than an individual employee personnel grievance. It asserts that discrimination is occurring against all Chinese–Americans in Tao's unit, and specifically characterizes Tao's administrative appeal as a 'protest' against such racial discrimination. While the letter may have been instigated by an individual personnel dispute, its content reaches beyond that dispute to a broader issue—racial discrimination in a public agency.

*Id.* at 189–90, 27 F.3d at 639–40 (citations omitted). Examination of the content, form, and context of Ifill's speech reveals that it did not deal with matters of public interest to the extent that the speech at issue in *Zamboni* and *Tao* did.

Ifill alleges in three of the ten letters included in the record that the increase in the number of students in her classroom was "against the law," constituted "health, fire, safety, and building code violations," and "discriminated against" her special education students. Ifill's speech contains references to matters of potential public interest, but the form that it took and the fact that it was raised in the context of an intramural school dispute over the hiring of a teacher and classroom space allocation weaken Ifill's position. We decline to hold that because Ifill briefly mentions matters of potential concern

to the public, this court must undertake a *Pickering* analysis. To hold otherwise would force this court to engage in a *Pickering* analysis whenever such incantations are uttered. Because Ifill's statements do not meet the "public concern" standard as developed in the case law, they are not protected under the First Amendment, and thus Ifill's § 1983 claim, alleging the deprivation of a constitutional right by the principal and assistant principal, fails.

## III.

■ We agree with Ifill, however, that the trial court's decision to grant appellees' motion for summary judgment and accordingly dismiss Ifill's second complaint based upon *res judicata* grounds was erroneous, because the District failed to object to the second complaint as splitting a cause of action until after the judgment that supposedly created the preclusive effect—the April 20, 1992 order—and thus impliedly waived this defense. *See Gilles v. Ware*, 615 A.2d 533, 543-49 (D.C.1992) (per curiam) (adopting RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(a) (1982) rule on claim-splitting which requires a party to raise objection that another action is pending based upon same claim or be deemed to have acquiesced in the splitting of plaintiff's claim and thus be unable to assert

claim preclusion in either case based upon resolution of other).[9] In *Gilles*, the majority of the judges on the division agreed with the rule expressed in the RESTATEMENT (SECOND) OF JUDGMENTS, § 26(1)(a),[10] that waiver by acquiescence can occur when a defendant fails to object to the plaintiff's splitting of the claim. *See also Lake v. Jones*, 89 Md.App. 579, 598 A.2d 858, 861 (1991) (adopting RESTATEMENT (SECOND) OF JUDGMENTS, § 26(1)(a) and theory that failure to object to splitting of causes of action will act as acquiescence). Ifill, in her opposition to the District's motion for summary judgment, argued that the District waived the defense of *res judicata* and specifically cited the Restatement dealing with acquiescence to claim splitting.[11] There is no indication that the District objected to Ifill's splitting of the claim, and thus the District is precluded from arguing *res judicata* to bar Ifill's claim for damages after the trial court dismissed her claim for declaratory and injunctive relief.

■ Nevertheless, in light of our earlier holding, *supra* p. 192, that Ifill's speech, consisting of letters to the Superintendent, School Board, and Mayor, did not involve matters of public concern and are not protected under the First Amendment, Ifill is not entitled to any monetary relief under

9. There was no opinion for the court in *Gilles*, but the separate opinions of Judge (now Chief Judge) Wagner and Judge Ferren accepted the principle stated in RESTATEMENT (SECOND) OF JUDGMENTS, § 26(1)(a) and Comment a, though they differed on whether the defendant's behavior constituted acquiescence.

10. The RESTATEMENT (SECOND) OF JUDGMENTS, § 26(1) states in pertinent part:

(1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant: (a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein;

The third paragraph of Comment a reads in pertinent part:

Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude

the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim.

11. While appellant concedes that her first and second complaints are against the same parties and are based upon the same facts, she contends that she was "forced" to split her cause of action in order to comply with D.C.Code § 12–309 (1989 & 1994 Supp.). Appellant's argument is unpersuasive. Section 12–309 was created solely to provide reasonable notice to D.C. government officials of potential tort liability by the District. D.C.Code § 12–309 (1995 Repl.); *District of Columbia v. Campbell*, 580 A.2d 1295, 1299 (D.C.1990). Accordingly, this section does not apply to § 1983 causes of action. *Johnson–El v. District of Columbia*, 579 A.2d 163, 170 (D.C.1990) (Eighth Amendment claim brought under 42 U.S.C. § 1983 not subject to 12–309). Moreover, even if this section's notice requirements were applicable to the current case, compliance would not force or even encourage claim splitting.

§ 1983.[12] *See Word v. Tiber Island Coop. Homes, Inc.,* 491 A.2d 521, 523 n. 4 (D.C. 1985) (affirming judgment on other grounds than those relied upon by lower court).

## IV.

Finally, we also agree with Ifill that the trial court's decision to dismiss her third § 1983 complaint based on her failure to exhaust her administrative remedies was erroneous. As we discussed *supra*, it is well-settled that exhaustion of administrative remedies is not required prior to filing a § 1983 legal action. *See Roache, supra,* 654 A.2d at 1284. However, as Ifill acknowledges in her third complaint, the issues she raised there in seeking declaratory and injunctive relief are a continuation of the dispute initiated in her first suit. The issues raised in appellant's third complaint do not even remotely raise matters of "public concern" because they focus on the stressed relations between Ifill and her school principal culminating in her proposed two-day suspension for insubordination—a routine employee grievance situation. Accordingly, the trial court's analysis regarding Ifill's claim for declaratory and injunctive relief, together with our application of *Connick,* control her third complaint, and require us to uphold the dismissal. *See Word, supra,* 491 A.2d at 523 n. 4.

In view of the foregoing, the several orders of the trial court appealed here are affirmed.

*So ordered.*

---

12. As an aside, Judge Long noted in her order granting summary judgment to the defendants in Ifill's second complaint, "[i]t is clear ... that there is no right to bring an action for monetary damages for the sort of harm alleged by Mrs. Ifill," (citing *inter alia, Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)) (holding that federal civil employee cannot sue for monetary damages alleging constitutional tort because Congress provided meaningful remedies for federal civil employees who have been unfairly disciplined for making critical comments. about workplace). We need not consider whether a holding like that in *Bush* would be made regarding District of Columbia employees.