Elaine **REIDENBACH**, Plaintiff,

v.

**U.S.D. NO. 437, and Edward E. Lignitz, Individually and in his Official Capacity as Transportation Supervisor for U.S.D. No. 437, Defendants.**

No. 94–4073–RDR.

United States District Court,
D. Kansas.

Jan. 23, 1996.

Pantaleon Florez, Jr., Florez & Frost, P.A., Topeka, KS, for plaintiff.

William E. Enright, Scott, Quinlan & Hecht, Topeka, KS, Fred W. Rausch, Jr., Fred W. Rausch, Jr., Chtd., Topeka, KS, for defendants.

### MEMORANDUM AND ORDER

ROGERS, Senior District Judge.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. She contends that her due process rights under the Fourteenth Amendment and her free speech rights under the First Amendment were violated when she was terminated from her position as a bus driver for defendant Unified School District No. 437. She brings this action against the school district and her former supervisor, Edward E. Lignitz, the director of transportation for the school district. This matter is presently before the court upon defendants' motion for summary judgment.

■ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990).

■ "While the party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact, the moving party need not negate the nonmovant's claim, but need only point out to the district court 'that there is an absence of evidence to support the nonmoving party's case.'" *Universal Money Centers, Inc. v. American Telephone & Telegraph Co.*, 22 F.3d 1527, 1529 (10th Cir.) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)), *cert. denied*, ── U.S. ──, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994). Once the moving party carries this burden, the nonmovant "may not rest upon mere allegations or denials of his pleading but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510.

The following facts are accepted as uncontroverted for the purposes of the motion for summary judgment. Plaintiff had been employed by USD No. 437 as a bus driver for twelve years prior to her termination in June

1992. Prior to the 1991–92 school year and during that year, plaintiff complained to her supervisor, defendant Lignitz, about the safety of the children on her bus due to overcrowding. She raised the concern that requiring three students on each seat caused a safety problem due to the size of her riders, who were middle and high school students. Plaintiff also complained to other bus drivers about the problem. On March 27, 1992, she wrote the following memo to Lignitz:

During the week of August 26, 1991, I advised you of the number of students on my [Washburn Rural High School] and [Washburn Rural Middle School] route. I have brought this to your attention on at least three other occasions, to my knowledge! I feel that seven months is more than enough time to have acted on this problem which still remains an uncomfortable ride for the students, not to mention an unsafe situation. You have one week to work out this problem or I will discuss the matter with Dr. Renken [Assistant Superintendent of USD No. 437].

On that date, Lignitz sent the following letter to Dr. Renken concerning plaintiff's memo:

Today at 11:45 am, I received the enclosed letter from Elaine Reidenbach. It appears to me that the last sentence is direct insubordination! In addition, there have been numerous problems and complaints about Elaine this school year. Very briefly, they include the following:

1. Mrs. Schonhoff wrote a letter to Mr. Schuler stating her concern about Elaine's ability.

2. Several notes and a letter from Mr. Camblin about Elaine's kindergarten routes.

3. Major confrontations between two teachers at Jay Shideler and Elaine.

Last year I had to switch her routes because of the numerous complaints. Parents stated that they would transport their children if Elaine was assigned to driver (sic) their kid's bus. Even after switching routes, I continued to receive complaints about Elaine.

Therefore, after examining all the information and in particular her last letter to me, I feel that it is no longer in the best interest of the school district to maintain Elaine Reidenbach as a USD 437 bus driver. I recommend she be dismissed at the earliest opportunity.

Dr. Renken told Lignitz that it would be better to handle plaintiff's termination at the end of the school year. At the conclusion of the school year, Lignitz recommended to Dr. Renken that plaintiff not be renewed as a bus driver. Dr. Renken then relayed this recommendation to the school board. Thereafter, the school board did not renew plaintiff's employment.

In the instant motion, defendants raise a variety of arguments. The defendants argue initially that they are entitled to summary judgment on plaintiff's First Amendment claim. They also contend that they are entitled to summary judgment on plaintiff's due process claims. Defendant Lignitz next contends that he is entitled to qualified immunity. Finally, the defendant school district argues that the evidence in the record demonstrates that it is entitled to summary judgment.

**FIRST AMENDMENT**

A public employer may not condition employment or its incidents upon an employee's relinquishment of his First Amendment rights. *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). The Supreme Court has developed a four-step process in analyzing whether a public employer's action impermissibly infringes on free speech rights. First, the court must decide whether the speech at issue touches on a matter of public concern. *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983). If it does, the court must balance the interest of the employee in making the statement against the employer's interest "in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734. From these two inquiries, which are questions of law, the court determines whether the speech constitutes protected activity. Next, if the preceding requisites are met, plaintiff must show his expression was the motivating force in the detrimental employment decision. *Mt. Healthy City School Dist. Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct.

568, 576, 50 L.Ed.2d 471 (1977). Finally, if plaintiff sustains this burden, the employer can still prevail if it shows by a preponderance of the evidence that it would have made the same decision regardless of the protected speech. *Id.*

The defendants begin by arguing that the plaintiff's speech was not protected by the First Amendment. In their briefs, the defendants essentially contend that the plaintiff's statements do not touch upon a matter of public concern because (1) they concerned problems on her own bus and not problems that existed throughout the system; (2) they related to a problem that did not constitute a violation of local, state or federal law; and (3) they were made privately to her supervisor and other bus drivers and not to a public audience. They rely heavily upon *Cliff v. Board of School Commissioners of City of Indianapolis*, 42 F.3d 403 (7th Cir.1994) and *Ifill v. District of Columbia*, 665 A.2d 185 (D.C.App.1995) for support of their argument that the plaintiff's speech is not protected.

Speech is protected only if it is on a matter of public concern, that is, if it relates to a topic of "political, social, or other concern to the community." *Connick*, 461 U.S. at 146, 103 S.Ct. at 1689. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole record." *Id.* at 147–48, 103 S.Ct. at 1690–91.

In analyzing whether speech constitutes a matter of public concern, the focus is on the motive of the speaker, "i.e., whether the speech was calculated to disclose misconduct or dealt with only personal disputes and grievances with no relevance to the public interests." *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir.1988). What is actually said on a topic must itself be of public concern. It must sufficiently inform the issue as to be helpful to the public. *Wilson v. City of Littleton*, 732 F.2d 765, 768–69 (10th Cir. 1984).

The arguments of the defendants lack merit and demonstrate a fundamental misunderstanding of First Amendment law. The context, content and form of plaintiff's statements reveal that they are protected by the First Amendment. There is no dispute

that the safety of school children is a matter of significant public concern. *See, e.g., Johnsen v. Independent School Dist.*, 891 F.2d 1485, 1490 (10th Cir.1989) (school nurse's comments about school's medication policy is of public concern as it "potentially impacts the health of the children attending school"); *Luethje v. Peavine School Dist.*, 872 F.2d 352, 355 (10th Cir.1989) ("[p]laintiff's complaints about unsanitary practices in school cafeteria and the administration's refusal to address them clearly dealt with matters of public concern"). Plaintiff's statements that overcrowding on her bus may cause safety problems are of obvious interest to members of the community, and particularly to parents of the defendant school district.

The defendants' reliance upon *Cliff* is wholly misplaced. In *Cliff*, a teacher alleged that she was terminated and denied a transfer in retaliation for certain statements she made concerning the size of her classes and the general disorder at her school. Plaintiff had been a teacher in the Indianapolis school district for 28 years. In the mid–1980's, plaintiff received performance evaluation reviews that criticized her ability to maintain discipline and control in the classroom. In response to the critical evaluations, plaintiff complained that she should not be held responsible for the rude and disrespectful behavior of her students. Plaintiff continued to receive unsatisfactory evaluations during the late 1980's. Plaintiff responded by blaming discipline problems on the size of her classes and the lack of support from her school administration. She was subsequently denied a transfer to another school. Finally, after another unsatisfactory evaluation, plaintiff's contract with the school district was not renewed. The district court rejected her First Amendment claim, holding that her speech was not protected by the First Amendment because she had spoken on a matter of private rather than public concern. On appeal, the Seventh Circuit agreed.

The Seventh Circuit concluded that the statements by the plaintiff were not protected based upon an evaluation of the content, form and context of the statements. The Seventh Circuit recognized that the content of plaintiff's statements addressed a subject of general interest to the public. 42 F.3d at

409–10. Nevertheless, the court found that plaintiff's motive for making the statements was not to call public attention to these matters, but rather to respond to criticisms directed at her classroom performance. *Id.* at 410. "Thus, although Cliff's complaints may have touched tangentially on issue of interest to the public, that fact does not 'transform [this] purely private personnel matter into a matter of public concern.'" *Id.* at 411 (quoting *Phares v. Gustafsson,* 856 F.2d 1003, 1008 (7th Cir.1988)).

■ The context of the statements made by the plaintiff in this case is much different than that in *Cliff.* There is no indication here that plaintiff made her comments concerning bus safety for any reason other than her concern for the safety of the students. The fact that plaintiff's bus was not overcrowded based upon state regulations or that the particular problem raised by the plaintiff did not constitute a violation of local, state or federal law does not render her statements unprotected. The Constitution's guaranty of freedom to advocate ideas is not confined to the expression of ideas which are conventional or shared by a majority. *Kingsley International Pictures Corp. v. Regents of University of New York,* 360 U.S. 684, 689, 79 S.Ct. 1362, 1366, 3 L.Ed.2d 1512 (1959).

Similarly, the decision in *Ifill* is distinguishable from the instant case. There, a special education teacher complained after decisions were made by the principal of her school not to hire another special education teacher and to partition her classroom to share with another special education teacher. Plaintiff wrote letters to school officials and to the Mayor of the District of Columbia claiming that the overcrowding of her classroom constituted fire and safety hazards. The *Ifill* court determined that plaintiff's communications "dealt with her private employee grievances rather than a matter of public concern." 665 A.2d at 191. Once again, in reaching this conclusion, the court examined the content, form and context of plaintiff's speech. *Id.* at 192. The court noted that plaintiff's speech was raised "in the context of an intramural school dispute over the hiring of a teacher and classroom

space allocation." *Id.* The situation in *Ifill* is quite similar to that in *Cliff,* but much different than the instant case. As noted previously, the record in this case fails to reveal that plaintiff made her comments in response to any complaints or activity involving her job.

■ The defendants somehow believe that plaintiff's statements do not touch upon a matter of public concern because she was complaining only about safety problems on her own bus. As with many of the issues concerning the First Amendment, defendants misunderstand this aspect of the First Amendment. Merely because speech has a personal component does not render it "not" of public concern. *Smith v. Fruin,* 28 F.3d 646, 653 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995); *Peterson v. Atlanta Housing Auth.,* 998 F.2d 904, 916 (11th Cir.1993). "For example, if an employee of a nuclear plant feels that plant controls are inadequate to protect employees, that is a matter both of personal interest and public concern." *Peterson,* 998 F.2d at 916. Thus, the mere fact that plaintiff raised complaints concerning only the safety of her bus does not make them less worthy of First Amendment protection.

■ Defendants have also suggested that plaintiff's statements do not touch upon a matter of public concern because she never aired her complaints to the public. Defendants have overlooked a Supreme Court decision which directly deals with this issue. An employee's First Amendment rights are not lost simply because he "arranges to communicate privately with his employer rather than to spread his views before the public." *Givhan v. Western Consolidated School Dist.,* 439 U.S. 410, 415–16, 99 S.Ct. 693, 696–97, 58 L.Ed.2d 619 (1979).

In supplemental briefs, the defendants argued its interest in the efficiency of public services outweighs plaintiff's First Amendment interest. The defendants suggest that the statements made by the plaintiff are not protected by the First Amendment because they would have required the school district to purchase additional school buses at great expense.[1] The defendants contend that

---

1. In response to the defendants' argument that her complaints would have required the school

district to purchase several new buses, plaintiff suggested that the school district could have

*Orange v. District of Columbia,* 59 F.3d 1267 (D.C.Cir.1995) provides support for their position.

 The balancing test of *Pickering* requires the court to consider the government's interest in efficient provision of public services against the employee's speech interest. A number of factors are considered in evaluating a defendant's interest under the balancing test including "the manner, time, and place of the employee's expression ... the context in which the dispute arose ... [and] whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987). The focus is on the impact of the speech upon the "effective functioning of the public employer's enterprise." *Id.*

 The defendants' argument totally misses the point of the balancing test. The issue is how the employee's speech itself impacts the operation of government, not how the resolution of the employee's complaint or criticism would impact the operation of government. *See, e.g., Stewart v. Baldwin County Board of Education,* 908 F.2d 1499, 1506 (11th Cir.1990) (resolving *Pickering* balance in favor of school employee who spoke in nondisruptive manner at employee meeting where the school could not show any interruption of school functions); *Luethje,* 872 F.2d at 355 (*Pickering* balancing favored school employee where, although the employee's complaints created a community controversy, there was no evidence that her speech impaired discipline or the effective operation of the school); *Piver v. Pender County Board of Education,* 835 F.2d 1076, 1081 (4th Cir.1987) (assertion that speech by teacher at public meeting might result in turmoil insufficient to justify termination under *Pickering* ), *cert. denied,* 487 U.S. 1206, 108 S.Ct. 2847, 101 L.Ed.2d 885 (1988). The fact that more buses might be needed in order to solve the problem addressed by plaintiff's statements is not a relevant factor. There is no evidence that the statements made by the plaintiff impaired or disrupted the operation of the transportation system at USD No. 437.

The defendants' reliance upon *Orange* is also misplaced. In *Orange,* an administrator of the University of the District of Columbia brought suit alleging that he had been dismissed from his employment in retaliation for the exercise of his free speech rights. He claimed that he was terminated for releasing information that a fuel oil supplier used by the University was overcharging. The D.C. Circuit found that plaintiff's speech did touch upon a matter of public concern. 59 F.3d at 1272. However, the court applied the *Pickering* balancing test and concluded that it weighed in favor of the defendant. *Id.*

modified the bus routes to eliminate the danger of overcrowding. The defendants ridicule this suggestion in a responsive brief by asserting that such a solution would result in an "administrative nightmare." The defendants state: "[Plaintiff] apparently is suggesting that bus routes could be arranged so that if it became necessary for three students to sit in the same seat that students be assigned to buses according to their size which would include not only their natural girth, height and weight but that consideration should also be given to the season of the year and the number of and types of clothing including outer garments which they might be required to wear to be warm during cold or inclement weather."

The National Highway Traffic Safety Administration (NHTSA) has, however, recommended just such a solution to this problem. In 1991, the NHTSA considered various issues of school bus safety. One of the issues concerned seating on school buses. Two commenters before the NHTSA, including the National School Transportation Agency, suggested that the seating specifications for school buses were outdated and needed to be changed. The NHTSA declined to make any changes but made the following comments:

[T]he guideline's recommendation for seating "at least as large as a 5th percentile adult female, as defined in 49 CFR 571.208" is intended to identify the maximum number of students that could be transported on a school bus. In practice, school buses transport students of various sizes (from pre-schoolers to 12th graders). *For example, a bus that may be capable of easily accommodating 65 pre-school or elementary students may be capable of carrying only 43 high school students. This figure should, therefore, be adjusted based on the ages and sizes of the passengers involved.*

Highway Safety Program Guideline No. 17, Pupil Transportation Safety, 56 Fed.Reg. 19270, 19276 (1991).

at 1273. In reaching this conclusion, the *Orange* court noted that the University was aware of the wrongdoing noted by the plaintiff prior to plaintiff's release of information on the subject and was in the process of conducting an investigation on the matter. *Id.* The court found sufficient evidence that plaintiff's release of the information jeopardized the investigation. *Id.* The court determined that the defendant's interest in protecting the integrity of its investigation into fraud clearly outweighed whatever interest the plaintiff had in disclosing confidential information obtained as a result of his own investigation. *Id.*

The situation in *Orange* is radically different from the circumstances in this case. Defendants have failed to articulate how the transportation system of the school district was impaired or disrupted by the statements made by plaintiff. The application of the balancing test here, as previously noted, weighs heavily in favor of the plaintiff.

 Finally, defendants contend that the record shows that plaintiff's statements were not a motivating force in defendant Lignitz' recommendation that plaintiff not be reemployed for the 1992–93 school year or that the same decision would have been made regardless of the protected speech. We must disagree as to each contention. The court finds adequate evidence in the record to support plaintiff's contention that her statements were the reasons for Lignitz' decision. The timing of Lignitz' decision certainly provides circumstantial evidence for plaintiff's position. In addition, and perhaps more importantly, defendant Lignitz admitted in his deposition that plaintiff's statements concerning bus safety were one of the factors in his decision to recommend nonrenewal. The court acknowledges that defendant Lignitz immediately backpedaled from this statement when his counsel asked another question, but we believe that a jury must consider which answer is the correct one. In sum, the question of whether plaintiff's statements were a motivating force in defendant Lignitz' decision and whether he would have reached the same decision in the absence of the plaintiff's protected conduct must be decided by a jury. *See Mt. Healthy City Board of Education,* 429 U.S. at 287, 97 S.Ct. at 576.

**PROCEDURAL DUE PROCESS**

The defendants contend that they are entitled to summary judgment on plaintiff's due process claim because (1) the facts in the record fail to support such a claim; and (2) plaintiff has waived her right to proceed on this claim. Plaintiff has failed to respond to either of these arguments. Because the first argument is dispositive, the court need not reach the second contention.

 The defendant contends that the facts in the record reveal that plaintiff did not have a property interest in her employment. We agree. Plaintiff has failed to provide any valid support for her contention that she had a property interest in her employment as a bus driver. The mere fact that the school district had previously renewed plaintiff's contract for twelve years prior to the decision not to renew it is insufficient to establish a property interest. *See Martin v. USD No. 434,* 728 F.2d 453, 455 (10th Cir.1984) (evidence that principal had been reappointed for eleven consecutive years prior to nonrenewal does not establish legitimate expectation in continued employment). Accordingly, the defendants are entitled to summary judgment on plaintiff's procedural due process claim.

**SUBSTANTIVE DUE PROCESS**

The court notes that the plaintiff has alleged in her complaint and in the pretrial order a violation of her substantive due process rights. Plaintiff has not provided any details on this claim. We are persuaded that the defendants are also entitled to summary judgment on this claim.

 The standard for judging a substantive due process claim is whether the challenged government action would " 'shock the conscience' of federal judges." *Collins v. City of Harker Heights,* 503 U.S. 115, 126, 112 S.Ct. 1061, 1069, 117 L.Ed.2d 261 (1992). "[T]o satisfy the 'shock the conscience' standard, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Uhlrig v. Harder,* 64 F.3d 567, 574 (10th Cir.1995). "[T]he plaintiff must demonstrate a degree of

outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.*

The facts alleged by the plaintiff in this case, even if ultimately discovered to be true, fall short of demonstrating conduct that shocks the court's conscience. Accordingly, the defendants are entitled to summary judgment on plaintiff's substantive due process claim.

## QUALIFIED IMMUNITY

Defendant Lignitz contends that he is entitled to qualified immunity on plaintiff's First Amendment claim. He raises two arguments in support of his contention. First, he contends that the law was not clearly established on plaintiff's First Amendment claim. Second, he contends that he did not violate plaintiff's rights under the First Amendment because he only recommended that plaintiff's employment not be renewed.

Public officials enjoy qualified immunity from civil damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Pleasant v. Lovell*, 876 F.2d 787, 794 (10th Cir.1989). Once a defendant asserts qualified immunity, the plaintiff must "show that the law was clearly established when the alleged violation occurred and come forward with facts or allegations sufficient to show that the official violated the clearly established law." *Woodward v. City of Worland*, 977 F.2d 1392, 1396–97 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3038, 125 L.Ed.2d 724 (1993). Plaintiff's burden cannot be met merely by identifying in the abstract a clearly established right and then alleging defendant violated that right. *Patrick v. Miller*, 953 F.2d 1240, 1243 (10th Cir.1992). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir.1992). Nevertheless, "[t]his is not to say that an official action is protected by qualified immunity unless the

very action in question has been previously held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). If plaintiff meets this burden, defendant then assumes "the normal summary judgment burden of establishing that no material facts that would defeat his claim of qualified immunity remain in dispute." *Woodward*, 977 F.2d at 1396–97.

The application of the defense of qualified immunity to First Amendment cases has been recognized as "difficult, but not impossible." *Patrick*, 953 F.2d at 1246. The Tenth Circuit has provided the following guidelines:

> *Harlow* is intended as a shield against liability but cannot become an insuperable barrier; therefore, public officials lose immunity in the face of clearly established law. However, because a rule of law determined by a balancing of interests is inevitably difficult to clearly anticipate, it follows that where *Pickering* balancing is required, the law is less likely to be well established than in other cases. We believe that except for case-by-case analysis and application, the rule cannot be better stated than in *Harlow* itself with careful consideration of its underlying principles.
>
> In some circumstances, the fact-specific nature of the *Pickering* balancing may preclude a determination of "clearly established law," thereby giving rise to qualified immunity under *Harlow....* We believe that the approach we adopt gives proper consideration to the concerns which prompted the Supreme Court to recognize qualified immunity, while it protects individuals from unprincipled behavior by a public employee's supervisors acting under color of law.

*Melton v. City of Oklahoma City*, 879 F.2d 706, 729 (10th Cir.1989), *modified on other grounds*, 928 F.2d 920 (10th Cir.) (*en banc*), *cert. denied*, 502 U.S. 906, 112 S.Ct. 296, 116 L.Ed.2d 241 (1991).

The court's previous discussion on the issues of whether plaintiff's speech in this case is protected by the First Amendment is relevant to the application of the qualified immunity defense. As recognized earlier in this

opinion, the law is well-settled that statements concerning the safety of school children touch on a matter of public concern. The aforementioned cases from the Tenth Circuit were decided over five years prior to the incidents that led to this litigation. Moreover, we are convinced that the protected nature of plaintiff's speech was sufficiently clear that defendant Lignitz should have known that the school district's interests would not survive a balancing test. Defendant Lignitz has failed to suggest what effect the plaintiff's statements had on the operation of the school district's transportation system. The court suspects that the impact was inconsequential since the plaintiff's statements were made only to defendant Lignitz and other bus drivers. Absent any particularized evidence of the defendant's interest in this case, we must surmise that in light of the protected nature of the plaintiff's speech and the well-defined contours of the *Pickering* analysis, defendant Lignitz should have known his conduct would not survive a balancing inquiry. *See, e.g., Patrick,* 953 F.2d at 1246–49 (city officials were not entitled to qualified immunity where they terminated city finance director for statements made regarding perceived illegalities in city's budgeting process and racial discrimination in city government); *Wulf v. City of Wichita,* 883 F.2d 842, 864–67 (10th Cir.1989) (police chief not entitled to qualified immunity for recommending termination of police officer who wrote letter alleging anti-union animus by police chief).

Defendant Lignitz has also suggested that he has not violated the plaintiff's First Amendment rights because he only recommended her nonrenewal as a bus driver to a superior. The court also finds no merit to this contention. The law is well-settled that recommending authority is sufficient to impose liability. *See Wulf,* 883 F.2d at 864; *Jett v. Dallas Independent School Dist.,* 798 F.2d 748, 758 (5th Cir.1986), *aff'd in part and remanded on other grounds,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). There is sufficient evidence before the court indicating that defendant Lignitz' recommendation "caused" plaintiff's termination. Accordingly, the court cannot award summary judgment to defendant Lignitz based upon qualified immunity.

## LIABILITY OF SCHOOL DISTRICT

The defendant school district contends that it is entitled to summary judgment because there is no evidence that it was aware of the statements made by the plaintiff.

Liability under § 1983 cannot rest upon the doctrine of *respondeat superior. City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989). A direct causal link must exist between the acts of the governing body sought to be held liable and the alleged constitutional deprivation. *Id.* Such a causal connection may be established in two ways: (1) when the governing body has delegated its decisionmaking authority to the official whose illegal conduct caused the harm, *Pembaur v. City of Cincinnati,* 475 U.S. 469, 485, 106 S.Ct. 1292, 1301, 89 L.Ed.2d 452 (1986); and (2) when the governing body retains its decisionmaking authority but exercises it with deliberate indifference to the constitutional rights of those affected by its decisions, *City of Canton,* 489 U.S. at 388, 109 S.Ct. at 1205.

The court is unable to find the necessary causal connection here. The record fails to provide any support that defendant Lignitz had final decisionmaking authority. *See Randle v. City of Aurora,* 69 F.3d 441, 448–49 (10th Cir.1995). Plaintiff has readily acknowledged that defendant Lignitz did not have the authority to terminate her. The record reveals that he had only the ability to make a recommendation to his superior or to the school board. The record fails to show any evidence that the school board delegated any policymaking authority to Lignitz. *See Gates v. Unified School Dist. No. 449,* 996 F.2d 1035, 1043 (10th Cir.1993). Accordingly, the school district cannot be held liable on this basis. *See Jantz v. Muci,* 976 F.2d 623, 631 (10th Cir.1992) (under Kansas law, school board not liable for principal's actions because school board had ultimate legal authority to review decisions involving hiring and firing of employees), *cert. denied,* — U.S. —, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993); *Ware,* 902 F.2d at 819 (same).

Moreover, there is no evidence to support the contention that even if the school district retained its decisionmaking power, it acted

with deliberate indifference to plaintiff's First Amendment rights in approving her nonrenewal. Plaintiff has failed to come forward with any evidence indicating that the school board was aware of her statements. She admits that she never brought the problem to the attention of any member of the school board. She further acknowledges that she made no complaints about this matter to anyone other than defendant Lignitz and a few other bus drivers. Moreover, she has no evidence that defendant Lignitz ever advised the school board of her complaints. Plaintiff has suggested that the school board was aware of the issues raised by her based upon a newspaper article where the issue of three students in one bus seat was discussed during a school board meeting. This article, however, fails to support the plaintiff's contention that the school board was aware of plaintiff's comments on this issue. The article notes that a student appeared before the school board and complained about the practice of requiring three students in a school bus seat. The article, however, fails to make reference to the plaintiff. The record is absent of any evidence that the school board was aware of the comments made by plaintiff at the time they decided not to renew her contract. Accordingly, the court finds no evidence that the school board acted with deliberate indifference in approving Lignitz' recommendation.

## SUMMARY

The court finds that the instant motion must be granted in part and denied in part. The defendant school district is entitled to summary judgment on all of plaintiff's claims. Defendant Lignitz is entitled to summary judgment on plaintiff's procedural and substantive due process claims. The court cannot grant summary judgment to defendant Lignitz on plaintiff's First Amendment claim. This claim must proceed to trial.

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment (Doc. # 29) be hereby granted in part and denied in part. Defendant USD No. 437 is entitled to summary judgment on all of plaintiff's claims. Defendant Lignitz is entitled to summary judgment on plaintiff's procedural and substantive due process claims. The

remainder of the defendants' motion is denied.

**IT IS SO ORDERED.**