**Kuo–Yun TAO, Appellant,**

v.

**Louis FREEH, Individually and as Director, Federal Bureau of Investigation; Steven L. Pomerantz, Individually and as Deputy Assistant Director–Personnel Officer, Administrative Services Division, Federal Bureau of Investigation, Appellees.**

No. 92–5502.

United States Court of Appeals, District of Columbia Circuit.

Argued May 9, 1994.

Decided July 8, 1994.

John H. Young, Washington, DC, for appellant. With him on the briefs was Ellen F. Randel, Washington, DC.

Marina Utgoff Braswell, Asst. U.S. Atty., Washington, DC, for appellees. With her on the brief were Eric H. Holder, Jr., U.S. Atty., and John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, DC.

Before MIKVA, Chief Judge, SENTELLE and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

This is an appeal from the grant of summary judgment to appellees whom appellant Kuo–Yun Tao alleges required her to go through a lengthy promotion-application process for a second time, while other similarly-situated employees were promoted on the basis of their first applications, in retaliation for her exercise of protected speech.[1] The

---

1. Appellant Tao also alleged that appellees' failure to apply the same promotion procedures and standards to her as to other similarly situated persons violated her right to equal protection. She originally claimed an equal protection viola-

tion because appellees had not promoted any Chinese–Americans in the Language Service Unit. However, two of the other Chinese–Americans who had been denied a promotion were promoted before she filed her lawsuit. There-

district court found that appellees had taken no "adverse action" against appellant sufficient to raise a constitutional claim. Because the requirement that Tao submit new lengthy promotion-application materials is sufficient, as a matter of law, to constitute an "adverse action" for constitutional purposes, we reverse and remand the case in light of genuine issues of material fact as to whether appellees' treatment of Tao was in retaliation for her exercise of protected speech.

### I.

Appellant Kuo–Yun Tao, an American citizen of Chinese descent, is employed as a GS–11 Chinese language specialist at the Language Service Unit (LSU) in the Washington Metropolitan Field Office of the Federal Bureau of Investigation. Tao applied in November, 1990, for a promotion to GS–12, submitting numerous examples of her work, as well as a translation prepared from a tape assigned by appellees. Tao spent twenty-seven hours preparing her application materials. Appellees found that her translations were accurate but that they lacked conciseness and organization, and they denied her promotion.

Tao filed an administrative appeal in which she complained that the denial of her promotion was arbitrary and capricious in light of an August 1990 memorandum stating that accuracy would be the only criterion applied to promotion applications. In addition, Tao's husband, who was her legal representative, wrote a letter to the Director of the FBI on March 8, 1991, advising that Tao's appeal was the "first voice of protest" against discrimination within the LSU against Chinese–Americans and requesting that the director

intervene. On August 20, 1991, appellees reversed their position earlier in the summer that they would reassess Tao's promotion application without her submission of new materials, and on November 7, 1991, they denied her appeal.

Two other Chinese–American applicants in the LSU—Dennis Chang and Pearl Lau—were denied promotions at about the same time as Tao. Chang's translations were criticized for accuracy, omissions, and conciseness, while Lau's translations were criticized for accuracy and omission problems. However, Chang and Lau subsequently received an additional internal review of their original promotion paperwork, and the reviewer found that their translations were accurate. To resolve the conflict between the first and second reviewers, appellees sent Chang's and Lau's translations to an external reviewer, who found the translations to be accurate. Chang and Lau were then promoted on August 25, 1991, despite the fact that their translations had been criticized for problems besides accuracy.[2]

By contrast, Tao was informed by appellees that she would be required to submit new testing materials before she would be reassessed for promotion. She never received a reassessment of her original translations submitted with her application for promotion, and she was not promised a promotion upon submission of the new materials. On January 15, 1992, Tao sued appellees in the district court for declaratory and injunctive relief, alleging that appellees' treatment of her promotion application violated her First Amendment rights to free speech and to petition the government for redress of

fore, Tao's counsel stated at oral argument that her appeal should be considered on the basis of her First Amendment claim. Accordingly, our discussion of the proceedings in the district court is confined to Tao's First Amendment claim.

**2.** An internal FBI memorandum dated July 1, 1991, states:

Because LSU clouded the issue in these matters by originally giving the [application] package only to one reviewer and then turning down the promotions based upon only one reviewer's comments, the promotions [of Chang and Lau] are being recommended at this time in spite of possible additional ele-

ments which might be pertinent ... other than accuracy—LSU judgment relative to conciseness and institutional knowledge. The certification of [certain named FBI officials] relative to these issues will suffice in these matters at this time.

It appears from this memorandum that Chang and Lau were "certified" by their supervisors to meet the conciseness and relevancy criteria, thus allowing them to be promoted despite the deficiencies found in their translations. The record does not show that Tao was given the opportunity to have her supervisors "certify" her for conciseness and relevancy.

grievances. She sought reconsideration of her original promotion application by outside experts without a requirement that she resubmit new materials. Appellees moved to dismiss the complaint, or for summary judgment, averring that Tao was treated differently than Chang and Lau only because Tao's application raised different concerns. Tao cross-filed for summary judgment. The district court granted appellees' motion on the ground that appellees' requirement that Tao submit new materials in order to be reassessed for promotion was not an adverse action sufficient to support a constitutional claim, 808 F.Supp. 24.

## II.

■ Our review of the grant of summary judgment is *de novo*, applying the same standards as the district court.[3] *See e.g., Shields v. Eli Lilly and Co.*, 895 F.2d 1463, 1465–66 (D.C.Cir.1990). Summary judgment should be granted only where there are no genuine issues of material fact, and all inferences must be viewed in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 255, 106 S.Ct. 2505, 2511, 2513–14, 91 L.Ed.2d 202 (1986) (applying same standard as FED.R.CIV.P. 50(a)) (citation omitted); *see National Souvenir Ctr., Inc. v. Historic Figures, Inc.*, 728 F.2d 503, 512 (D.C.Cir.), *cert. denied*, 469 U.S. 825, 105 S.Ct. 103, 83 L.Ed.2d 48 (1984). If material facts are at issue, or, though undisputed, are susceptible to divergent inferences, summary judgment is not available. *Alyeska Pipeline Serv. Co. v. United States Envtl. Protection Agency*, 856 F.2d 309, 314 (D.C.Cir.1988).

Tao's complaint rests on the premise that the government may not treat her adversely in retaliation for her exercise of free speech. *See Rutan v. Republican Party of Illinois*, 497 U.S. 62, 72, 110 S.Ct. 2729, 2735–36, 111 L.Ed.2d 52 (1990) (quoting *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972)). In the seminal case of *Pickering v. Board of Educ.*, the Supreme Court held that the First Amend-

ment precluded dismissal of a school teacher who publicly criticized the Board of Education's handling of a bond issue because "free and open debate" about whether a school system needs additional funds "is vital to informed decision-making by the electorate." 391 U.S. 563, 571–72, 88 S.Ct. 1731, 1736–37, 20 L.Ed.2d 811 (1968). The Court stated that it is essential that public employees such as teachers be able to speak freely on issues of public concern without fear of retaliation. *Id.* at 572, 88 S.Ct. at 1736–37.

However, the Supreme Court has also recognized that "government offices could not function if every employment decision became a constitutional matter," and it has drawn the line at "employee expression [that] cannot be fairly considered as relating to any matter of political, social, or other concern to the community." *See Connick v. Myers*, 461 U.S. 138, 143, 146–47, 103 S.Ct. 1684, 1689–90, 75 L.Ed.2d 708 (1983). The Court has settled on the formulation that its task "is to seek 'a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* at 142, 103 S.Ct. at 1687 (quoting *Pickering v. Board of Educ., supra*, 391 U.S. at 568, 88 S.Ct. at 1734–35).

■ Thus, consistent with the test developed in *Pickering* and its offspring, this court has described the public employee's First Amendment cause of action as having four elements. *Hall v. Ford*, 856 F.2d 255, 258 (D.C.Cir.1988). First, the public employee must have been speaking on a matter of public concern. *Id.* If the speech is not of public concern, it is unnecessary to scrutinize the basis for the adverse action absent "the most unusual circumstances." *Id.* (quoting *Connick v. Myers, supra*, 461 U.S. at 147, 103 S.Ct. at 1690). Second, the court must balance the interest of the employee "as a citizen, in commenting upon matters of public concern" and the interest of the employer "in promoting the efficiency of the public servic-

---

3. Because the district court considered matters outside the pleadings in disposing of the litigation, we treat this case as one in which summary judgment was granted. *Perry v. Block*, 684 F.2d 121, 126 (D.C.Cir.1982) (citations omitted).

es it performs through its employees." *Pickering v. Board of Educ., supra,* 391 U.S. at 568, 88 S.Ct. at 1734–35. Thus, only where the employee's speech touches on a matter of public concern, and only where the employee's First Amendment interest is not outweighed by any disruption that the speech may cause to the efficiency of the public enterprise, is that speech constitutionally protected. *Id.* at 572–73, 88 S.Ct. at 1736–37; *Waters v. Churchill,* —— U.S. ——, ——, 114 S.Ct. 1878, ——, 128 L.Ed.2d 686 (1994). Third, the employee must prove that her speech was a substantial or motivating factor in the denial of the benefit that she sought. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Finally, the government employer must be given an opportunity to prove that it would have reached the same decision even absent the protected conduct. *Id.* The first two factors under the *Pickering* test are questions of law for the court to resolve, while the latter are questions of fact ordinarily for the jury. *Hall v. Ford, supra,* 856 F.2d at 258.

■ Tao asserts that appellees' requirement that she submit new materials in order to be reconsidered for promotion violated her First Amendment rights because no such requirement was imposed on other applicants and she was singled out in retaliation for her allegations of discrimination within the FBI. While the district court was unpersuaded that a requirement of twenty-seven additional hours of work in order to be considered for promotion constitutes an adverse action sufficient to implicate First Amendment concerns, decisions of the Supreme Court and other circuits make clear that such a requirement is sufficient. Employer action taken against an employee in response to her exercise of free speech need not be as significant as the denial of a promotion to raise a constitutional claim. *See e.g., Manhattan Beach Police Officers Ass'n, Inc. v. City of Manhattan Beach,* 881 F.2d 816, 818–19 (9th Cir. 1989) (denied consideration for new position within department); *Rode v. Dellarciprete,* 845 F.2d 1195, 1199–1200 (3d Cir.1988) (two day suspension); *McGill v. Board of Educ.,* 602 F.2d 774, 780 (7th Cir.1979) (teacher

transferred to another school: "test is whether the adverse action taken by the defendants is likely to chill the exercise of constitutionally protected speech") (citation omitted). Rather, as the Supreme Court has noted, the First Amendment protects government employees from "even an act of retaliation as trivial as failing to hold a birthday party for a public employee … when intended to punish her for exercising her free speech rights." *Rutan v. Republican Party of Illinois, supra,* 497 U.S. at 76 n. 8, 110 S.Ct. at 2738 n. 8 (ellipsis in original; quotation omitted).

Tao was faced with the repeated imposition of a rigorous testing requirement involved twenty-seven hours of additional work. In light of the broad construction of adverse action acknowledged by the Supreme Court in *Rutan v. Republican Party of Illinois, supra,* appellees' requirement that Tao resubmit lengthy testing materials, while allowing her co-workers to be reassessed on their original materials, is an adverse action sufficient to support her First Amendment claim. *Id.* If employees who exercise free speech find themselves facing more burdensome promotion requirements than those employees who remain silent, they are unlikely to speak freely on matters of public concern. *See id.* at 79, 110 S.Ct. at 2739–40; *Pickering v. Board of Educ., supra,* 391 U.S. at 572, 88 S.Ct. at 1736–37; *McGill v. Board of Educ., supra,* 602 F.2d at 780.

■ Similarly, we have no difficulty concluding that Tao has met her burden of showing that her complaint about racial discrimination was protected speech. *Pickering v. Board of Educ., supra,* 391 U.S. at 572–73, 88 S.Ct. at 1736–37. Whether an employee's speech is one of public concern depends on its content, form, and context, as revealed by the whole record. *Connick v. Myers, supra,* 461 U.S. at 147–48, 103 S.Ct. at 1690–91. The motivation of the employee is only one factor to be considered in assessing whether a statement is one of public concern. *See id.; Rode v. Dellarciprete, supra,* 845 F.2d at 1201. While an individual personnel dispute does not generally constitute a matter of public concern, *Connick v. Myers, supra,*

461 U.S. at 148, 103 S.Ct. at 1690–91; *Hall v. Ford, supra,* 856 F.2d at 259–60, an employee's speech aimed at resolving a personnel dispute may touch upon an issue of public concern. *See Connick v. Myers, supra,* 461 U.S. at 148, 103 S.Ct. at 1690–91; *Rode v. Dellarciprete, supra,* 845 F.2d at 1201; *Berg v. Hunter,* 854 F.2d 238, 242–43 (7th Cir. 1988), *cert. denied,* 489 U.S. 1053, 109 S.Ct. 1314, 103 L.Ed.2d 583 (1989).

Tao's allegation of racial discrimination was raised in a March 8, 1991 letter from her attorney/husband to the Director of the FBI. The letter stated:

> For approximately three years (1987–1990), FBIHQ LSU denied all requests for promotion (GS–11 to GS–12) forwarded by WMFO for its Chinese–American [language specialists] but granted promotion for many other [language specialists] of different ethnicity, national origin or race. This appeal is the first voice of protest from a Chinese–American [language specialist] against such practice as well as against LSU's arbitrariness and caprice.

The statement is broader than an individual employee personnel grievance. It asserts that discrimination is occurring against all Chinese–Americans in Tao's unit, and specifically characterizes Tao's administrative appeal as a "protest" against such racial discrimination. While the letter may have been instigated by an individual personnel dispute, its content reaches beyond that dispute to a broader issue—racial discrimination in a public agency.

A statement concerning racial discrimination on the part of a public agency is a matter of public concern because it involves information that enables "members of society to make informed decisions about the operation of their government." *McKinley v. City of Eloy,* 705 F.2d 1110, 1114 (9th Cir.1983) (citing *Thornhill v. Alabama,* 310 U.S. 88, 102, 60 S.Ct. 736, 744, 84 L.Ed. 1093 (1946);

*see Connick v. Myers, supra,* 461 U.S. at 148 n. 8, 103 S.Ct. at 1690–91 n. 8 (contrasting *Connick* with *Givhan v. Western Line Consol. School Dist.,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979), where the employee's "right to protest racial discrimination [involved] a matter inherently of public concern"). Indeed, according to Tao's statement of material facts not in dispute, the issue of racial discrimination within the FBI received media coverage near the time that Tao filed her agency appeal, which indicates the issue was one of public concern. *See Rode v. Dellarciprete, supra,* 845 F.2d at 1201–02. The form of her statement, by letter to the director of the FBI, also supports the conclusion that her protest went beyond her individual grievance. Her sworn complaint and summary judgment motions papers support the conclusion that Tao was expressing her view as a citizen and not simply as a grievant; her individual grievance was one part of her protest but it was not the whole of it. Therefore, the fact that Tao was motivated by her own desire to be promoted does not prevent her statement about racial discrimination from being protected. As the Third Circuit observed in *Rode v. Dellarciprete:*

> Dismissing [appellant's] speech as unprotected merely because she had a personal stake in the controversy fetters public debate on an important issue because it muzzles an affected public employee from speaking out.

*Id.* at 1202.

■ In addition, contrary to appellees' contention at oral argument, the fact that Tao's statement was not made public does not affect the analysis. The freedom of speech guaranteed by the First Amendment is not "lost to the public employee who arranges to communicate privately with his [or her] employer rather than to spread his [or her] views before the public."[4] *Givhan v.*

---

4. No more persuasive is appellees' suggestion that Tao's case is distinguishable from *Rutan v. Republican Party of Illinois, supra,* and *Manhattan Beach Police Officers Ass'n v. City of Manhattan Beach, supra,* because the alleged adverse action occurred before the exercise of her First Amendment rights. The adverse action in the instant case is the requirement that Tao resubmit new application materials before she will be reassessed for promotion, and this requirement was imposed after her exercise of free speech. Appellees' reliance on *Murray v. Gardner,* 741 F.2d 434 (D.C.Cir.1984) and *Hall v. Ford, supra,* 856 F.2d 255, is misplaced because the instant case involves protected speech, *see Murray v. Gardner,* 741 F.2d at 439, and Tao is not a high

*Western Line Consol. School Dist., supra,* 439 U.S. at 415–16, 99 S.Ct. at 696–97.

For these reasons, we conclude that Tao met her burden to show that she was speaking on a matter of public concern. Her complaint of discrimination, while expressed in connection with her disappointment over not being promoted, was a matter of serious public import that was broader than her individual personnel dispute. Therefore, Tao has shown that her speech is protected under the *Pickering* test because it concerns a matter of public concern and there is no evidence, at least at this point in the proceedings, much less any claim by appellees, that her speech disrupted appellees' operations.[5]

The two remaining elements of Tao's cause of action—whether Tao's assertion of discrimination was a substantial or motivating factor in appellees' treatment of her, and whether appellees have shown that they would have required new testing materials from Tao even absent the protected speech— are factual questions ordinarily left to the jury. *Hall v. Ford, supra,* 856 F.2d at 258. Because genuine issues of material fact remain as to these questions, the case must be remanded to the district court.[6]

Tao presented evidence that appellees' refusal to re-evaluate her application related to her exercise of protected speech by showing that other similarly situated employees who made no claims of discrimination were re-evaluated. However, appellees presented evidence that the decision to allow Chang and Lau to be re-evaluated on their original ap-

plications was based on the fact that Chang and Lau had only accuracy problems and were otherwise qualified for promotion. The district court concluded that the different treatment Tao received when compared to the other two applicants for promotion appeared to be based on Tao's lack of organization and conciseness rather than on Tao's assertions of discrimination. But, the court is not to weigh the evidence on summary judgment. *See Anderson v. Liberty Lobby, supra,* 477 U.S. at 249, 106 S.Ct. at 2510–11. The record does not permit a determination of why translations with accuracy, omission and conciseness problems should be reassessed, while one with only conciseness and organization problems should not. Further, the record is unclear why Chang and Lau were promoted based on accuracy only, when Tao was not. Thus, while Tao has the burden to show that the adverse action was taken in retaliation for her exercise of free speech, she has demonstrated that there are genuine issues of material fact sufficient to preclude summary judgment. *See id.* at 249–50, 106 S.Ct. at 2510–11.

Accordingly, we reverse the grant of summary judgment to appellees and remand the case to the district court.

---

level employee whose expression reflected a policy disagreement with her superiors. *See Hall v. Ford, supra,* 856 F.2d at 265.

**5.** There is nothing in the record, as there was in *Connick v. Myers, supra,* 461 U.S. at 152–53, 103 S.Ct. at 1692–93, to show that Tao's speech was disruptive to the functioning of the office, would affect her ability as a translator, or would impair discipline or working relationships. Of course, discovery has not yet been completed in the instant case. However, cases involving speech alleging discrimination have generally found such speech not to adversely impact an efficient office environment. *See e.g., Rode v. Dellarciprete, supra,* 845 F.2d at 1202; *Matulin v. Village of Lodi,* 862 F.2d 609, 614 (6th Cir.1988). Indeed, appellees do not argue that they would be justified in suppressing such speech, but that

they took no action in response to Tao's statement.

**6.** Appellees suggested at oral argument that reversal of summary judgment in the instant case would cause virtually all Title VII claims to become First Amendment claims. Title VII is not in this case, and consequently, the issue was not briefed, and we do not decide it. Suffice it to say, *Pickering* claims could only be successful where there is evidence that the government retaliated against the employees for having filed the Title VII claim itself. *Cf. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, supra,* 429 U.S. at 287, 97 S.Ct. at 576; *Manhattan Beach Police Officers v. Manhattan Beach, supra,* 881 F.2d at 818–19; *Matulin v. Village of Lodi, supra* n. 5, 862 F.2d at 613–14.