**F.D.R. FOX, Plaintiff,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

**Civ. A. No. 91–0671–LFO.**

United States District Court, District of Columbia.

Feb. 17, 1995.

John H. Jamnback, Boraks & Jamnback, Washington, DC, for plaintiff.

Karen Maniscalco, Asst. Corp. Counsel, Washington, DC, for defendants.

OBERDORFER, District Judge.

*MEMORANDUM*

After plaintiff presented his case-in-chief (which included testimony by defendant Sylvia Kinard), defendants moved for judgment on the ground, among others, that none of the statements plaintiff alleges to have been the cause of his termination related to matters of "public concern." Higher courts have ruled that the judge rather than the jury must decide whether the statements were of "public concern". *Hall v. Ford*, 856 F.2d 255, 258 (D.C.Cir.1988). Viewing the plaintiff's evidence most favorably to him, I concluded that the statements were not of "public concern" as courts have interpreted that term and granted defendant's motion from the bench.

\* \* \* \* \* \*

Plaintiff's case rests on the premise that defendants were not permitted to terminate him for the exercise of his right to free speech guaranteed to him by the First Amendment on the authority of *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and lower court cases that followed it.

█ In order to prevail, a public employee must establish that the statements for which he claims First Amendment protection related to matters of "public concern," i.e. of "political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). Speech is of "public concern" when it "concerns issues about which information is needed or appropriate to enable members of society *to make informed decisions about the operation of their government.*" *Hall*, 856 F.2d at 259 (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir.1983)) (emphasis added). It is "determined by the content, form, and context of a given statement." *Connick*, 461 U.S. at 147–48, 103 S.Ct. at 1690–1691.

█ The content of plaintiff's statements at issue here was not of "public concern" as that term has been defined by case law. The speech for which plaintiff claims First Amendment protection is his report to the Metropolitan Police that $508 in cash was missing, and probably stolen, from the Claims Center of the District of Columbia Lottery Board. The report named no suspect and alleged no wrongdoing on the part of any authority figure in whom the public might have an interest. The incident described in the report did not allege any pattern or practice of theft or corruption. Plaintiff's report did not address any internal operational problem at the Lottery Board. It is relevant, though not dispositive, that plaintiff presented no evidence that the public has ever become aware of the report or the investigation, or that the public had, or could have had, any more than a passing interest in this particular matter. *But cf. Tao v. Freeh*, 27 F.3d 635, 640 (D.C.Cir.1994) (fact that plaintiff's statement about racial discrimination at the FBI was not made public does not change its characterization as a statement of "public concern").

The form and context of plaintiff's speech lend further support to this conclusion. The speech at issue in this case is a report of information he received in his capacity as Director of Security of the Lottery Board and passed on to the local police. He prepared the report in the routine of his job, not as a "whistleblower" complaint about, for example, some systemic problems or abuse of leadership authority at the Lottery Board.

In earlier denying defendants' motion for summary judgment, I relied upon *Wulf v. City of Wichita*, 883 F.2d 842 (10th Cir.1989). However, the evidence plaintiff presented at trial makes it apparent that *Wulf* is distinguishable. In *Wulf*, the letter protected by the First Amendment "alleged interference with the right of supervisory police officers to join the Fraternal Order of Police; unfair treatment of the Fraternal Order of Police private club vis-à-vis other private clubs; misappropriation and misuse of public funds; and sexual harassment of one officer by a supervisor." *Id.* at 857. The accusations involved grave and multiple breaches of public trust. Furthermore, in *Wulf*, plaintiff wrote the letter, not in performance of his routine law enforcement duties, but rather as an extraordinary complaint to the Attorney General of the state, an elected official.

Plaintiff argued in opposition to defendant's instant motion that three other cases support his position: *Walter v. Morton*, 33 F.3d 1240 (10th Cir.1994); *Glass v. Dachel*, 2 F.3d 733 (7th Cir.1993); and *Cooper v. Petray*, 854 F.2d 301 (8th Cir.1988). None of these cases arose in this Circuit; all of them are distinguishable on the facts.

*Cooper* involved a report of theft of evidence from the evidence room at a police department, and thus, implicated evidence tampering, a serious threat to the administration of justice, a subject of universal public interest. Furthermore, the *Cooper* court's affirmance of the district court's denial of summary judgment turned on the defendants' claims of official immunity; its two page opinion did not address whether the statements were of "public concern."

*Walter* involved a statement by a police officer investigating suspected criminal activity by the *Chief of Police.* In contrast, the report prepared by Mr. Fox did not specifically accuse any individual. Even if it had implicated Ms. Hines, a report of an alleged theft of $508 by a low level employee of the Lottery Board is in quite a different order of magnitude from accusations of criminal conduct by a high-ranking official such as a Chief of Police.

*Glass* is also distinguishable. The plaintiff in *Glass* was a deputy sheriff who had recently run for election to be sheriff and had lost. Plaintiff remained as a deputy, and it was the sheriff, the victor in the election, who disciplined him. The statements at issue were plaintiff's accusations of theft by his supervisor, a police captain, (a matter reported in the local press) and possible tampering with a file of evidence concerning a ten-year old murder investigation. The plaintiff in *Glass* made the accusations to a colleague who had told plaintiff earlier in the day about investigations of the sheriff's department by the state Department of Justice's Division of Criminal Investigations. Unlike the instant case, the statements in *Glass* were not made in the line of duty of his job.

Plaintiff has not cited to, and my research has not revealed, any case holding that a report to the local police by a security officer in the course of his duties of a single theft of cash, which named no suspect, is speech protected by the First Amendment.