**F.D.R. FOX, Appellant**

v.

**DISTRICT OF COLUMBIA,**
**et al., Appellees.**

No. 95–7063.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 18, 1996.

Decided May 21, 1996.

---

John H. Jamnback, with whom Robert A. Boraks, Washington, DC, was on the briefs, argued the cause for appellant.

Martin B. White, Assistant Corporation Counsel, with whom Charles F. Ruff, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, argued the cause for appellees. Garland Pinkston, Jr., Principal Deputy Corporation Counsel, Washington, DC, entered an appearance.

Before: WILLIAMS, GINSBURG and SENTELLE, Circuit Judges.

Opinion for the court filed by Circuit Judge WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

F.D.R. Fox appeals from the dismissal of First Amendment and due process claims stemming from his termination as an employee of the D.C. Lottery and Charitable Games Control Board. The district court rejected the First Amendment claim as a matter of law after Fox presented his case at trial, holding that the speech for which Fox alleged he was fired—a report to the police about a theft at the Board—was not about a matter of public concern. Because we find

that Fox's report was on a matter of public concern, we reverse and remand.

As to the due process claim, we agree with the district court that the District of Columbia provides an administrative process for hearing Fox's claim. There is no real claim as to the adequacy of that process except in one particular—it is uncertain whether it provides any remedy for the District's communication to Fox falsely suggesting that he had no right of appeal. Because of uncertainty over that issue, we vacate the judgment of the district court and remand for the court to hold the claim in abeyance while Fox pursues the remedy he would have pursued had he not been been misled, unless, of course, he now abandons such pursuit.

\* \* \*

On the morning of January 13, 1988, employees at the D.C. Lottery and Charitable Games Control Board discovered that a safe—evidently left unlocked overnight—was missing a little over $500. Fox, the Board's director of security, made some preliminary inquiries and informal reports within the Board and then reported the theft to the Metropolitan Police Department.

Defendant Sylvia Kinard, a deputy director of the Board, was not pleased by Fox's handling of the matter. She says that she thought his report to the police premature because Fox didn't complete his own investigation first. Fox alleges that the timing of his report was not really what bothered Kinard; rather, he says, she was angry because his call to the police placed Laverne Hines, the Board employee responsible for safeguarding the missing funds and a relative of a friend of Kinard, under uncomfortable outside scrutiny—scrutiny that delayed a desired promotion for Hines. (Hines was apparently never charged with any wrongdoing in the matter.) Fox says that he refused to talk to Kinard about his investigation because he believed he was to report only to the Board's executive director.

Kinard became the Board's acting director in March 1988 and promptly fired Fox. Her letter to Fox telling him of his dismissal said that "[a]s a probationary employee, you do not have the right to appeal which is accorded employees who have completed their pro-

bationary period." This omitted the rather critical truth that, as we shall see, Fox had a right to administrative review of *whether* he was a probationary employee. The letter went on to say that Fox could file a complaint with the D.C. Office of Human Rights, if he believed that the termination arose from discrimination on any of a long list of grounds, none of which was in fact a ground of complaint by Fox. Fox filed a complaint in federal district court under 42 U.S.C. § 1983 alleging that his firing violated his rights to free speech under the First Amendment and to due process under the Fifth Amendment.

*First Amendment*

Under *Pickering v. Bd. of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the constitutional propriety of firing a government employee on the basis of his speech depends on the "balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 568, 88 S.Ct. at 1734. A threshold inquiry, then, is whether the speech for which the employee claims he was fired is about a matter of public concern, i.e., of "political, social, or other concern to the community," looking at "the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 146–48, 103 S.Ct. 1684, 1689–91, 75 L.Ed.2d 708 (1983). That inquiry is a question of law for the court to resolve. *Id.* at 150 n. 10, 103 S.Ct. at 1692 n. 10; *Tao v. Freeh,* 27 F.3d 635, 639 (D.C.Cir.1994).

As we read the district court's opinion, *Fox v. District of Columbia,* 877 F.Supp. 6, 7 (D.D.C.1995), it invoked three grounds for rejecting Fox's claim that his report of the theft was on a matter of public concern: First, so far as appeared, the public never became aware of Fox's report of the theft, or the theft itself, or the laxity evidently giving rise to the theft. Second, there was no reason to think that, had it so known, "the public ... could have had[ ] any more than a passing interest in this particular matter." *Id.* at

7. Third, Fox made his report of the theft to his superior and to the police "in the routine of his job." *Id.* Although the subject of Fox's report was probably not front-page material, we think its potential interest sufficient to qualify as a matter of public concern and that the other two characteristics—the absence of actual media coverage and the report's being a regular part of Fox's work—do not count against that classification.

■ The absence of media coverage is of no consequence. Circuit law is clear that "the fact that [an employee's] statement was not made public does not affect the analysis." *Tao v. Freeh,* 27 F.3d at 640. Cf. *Givhan v. W. Line Consol. Sch. Dist.,* 439 U.S. 410, 415–16, 99 S.Ct. 693, 696–97, 58 L.Ed.2d 619 (1979) (public employee who speaks privately with employer has same rights as one who "spread[s] his views before the public"). An employee is not constitutionally penalized for making a sensitive report discreetly and without fanfare, or for failing to elicit the media's interest. Editors are not gatekeepers for employees' First Amendment rights.

As to whether the public *could* have an interest in the matter, *Pickering*'s balancing is not reserved to cases inspiring front-page coverage. Fox's report may not have been exciting—indeed, he did not name names or make the sort of sweeping allegations that might tend to raise the public's eyebrows if known—but it did involve the theft of funds from a public agency, evidently made possible by a striking neglect, a matter that, unless the public is hopelessly jaded, would bear on its appraisal of the agency's performance. Cf. *Murray v. Gardner,* 741 F.2d 434, 438 (D.C.Cir.1984) (court could not find anything in employee's remarks about internal furlough plan that would "enrich the public's store of appropriate knowledge on the operation of the [public agency]"). In *Wulf v. City of Wichita,* 883 F.2d 842 (10th Cir. 1989), the court found a letter to the Kansas attorney general alleging misappropriation of public funds by a police chief to be of public concern, even though the amount was small and the chief did not personally profit. *Id.* at 859. As it seems to have taken rather drastic managerial ineptitude here to make the theft possible, we think the report of the event edges, barely, into the area of public concern.

The district court seemed to place great weight on the fact that Fox's report was made in the performance of his duties, unfavorably contrasting his "routine" report, made as part of his job, with unusual whistleblower complaints. *Fox,* 877 F.Supp. at 7–8. We see no convincing reason why the employee's sticking to standard internal channels for raising an alarm should count against him in this calculus. One might hypothesize that if the whistleblowing is within internal channels, that very fact must mean that the agency has provided for whistleblowing, so that there is no need for judicial interference. But that argument supposes that responses to actual instances of whistleblowing can safely be presumed proper—that an agency that has embraced a whistleblowing regime will rarely if ever try to punish and stifle any legitimate finger-pointing. But the possible reasons for selective permission of whistleblowing seem legion. Alternatively, it might be thought that the divide between internal and external communications may represent a rough cut between mere matters of employee grievance, which are unprotected under *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and genuine issues of public concern. But that cut seems *too* rough—many internal office communications, Fox's included, bear no apparent connection to employee grievances. Accordingly, we are not surprised that our search has yielded no case supporting the idea that a communication made within internal channels is on that account any less likely to be about a matter of public concern. Of course, Fox's opening of discussions with the police at a relatively early stage may have represented a deviation from required procedures; if so, that could count against him in the *Pickering* balance, perhaps fatally. But it does not bear on the threshold question of whether the speech related to an issue of public concern.

Defendants press an additional theory, not embraced by the district court, that Fox's police report *was* more or less the result of an internal office dispute and therefore within the set of "employee grievances" found not

to be of public concern by *Connick* and later cases such as *Barnes v. Small,* 840 F.2d 972, 975 (D.C.Cir.1988). But unless the dismissing manager's desire to remove the speaker turns the case into one of employee grievance (a rule that would largely eliminate *Pickering* ), we do not see any basis for the defendants' argument. Unlike *Barnes,* where a union representative sent a spate of letters to a management supervisor accusing a management representative (apparently without substantial basis) of a variety of crimes and of conducting a personal vendetta against him, see *id.* at 982, the context of Fox's speech is not that of a purely personal grievance or intraoffice spat gone ballistic with trumped-up, scattershot claims of misbehavior. In *Barnes,* the speaker's accusation of criminal assault was, he later conceded, "hyperbole," involving the tossing of a sheet of paper at him; the remainder of his allegations were found to be of "similar character." *Id.* at 977–78. The defendants here make no claim that Fox's report arose from office politics or personal animosity, nor that its content concerned mundane office workings, as in *Connick,* where a questionnaire circulated by a disgruntled employee related only to internal administrative matters such as office morale and personnel transfer procedures. *Connick,* 461 U.S. at 148, 103 S.Ct. at 1690–91. See also *Foster v. Ripley,* 645 F.2d 1142, 1149 (D.C.Cir.1981) (employee's letter was merely airing an "internal dispute over the extent of his supervisory powers").

Because Fox's police report was on a matter of public concern, we vacate the judgment of the district court and remand the case for application of the rest of the *Pickering* test.

*Due process*

■ We review the district court's grant of summary judgment for the defendants de novo. *Petersen v. Dole,* 956 F.2d 1219, 1221 (D.C.Cir.1992).

■ Permanent career employees of the District of Columbia may be fired only for cause, and then only in accordance with a comprehensive scheme of regulations intended "to create a mechanism for addressing virtually every conceivable personnel issue among the District, its employees, and their unions." *District of Columbia v. Thompson,*

593 A.2d 621, 634 (D.C.App.1991); 1 D.C.Code § 617.1, §§ 601.1 *et seq.* (1981). The regulations provide for appeal of an "adverse action" such as a firing or demotion to the District of Columbia's Office of Employee Appeals. 1 D.C.Code § 606.3. The OEA's decisions may themselves be appealed to the District of Columbia courts. *Metro. Police Dept. v. Baker,* 564 A.2d 1155, 1159 (D.C.App.1989).

■ These substantive and procedural protections do not apply to an employee who is serving a probationary period; such employees may be fired at will and without administrative appeal. 1 D.C.Code §§ 617.1, 606.3(b); *Davis v. Lambert,* 119 Washington Law Rptr. 305, 308 (D.C.Sup.Ct.1991).

■ Of course, if an agency were completely free to classify a career employee as probationary before a firing, without any form of independent review, then the protections offered to career employees would be rather sieve-like. Fox claims that this is exactly what happened to him—denial of an opportunity to contest what he says is Kinard's misclassification of his status. But decisions of the Office of Employee Appeals make clear that Fox *had* an opportunity to contest the classification; appeal of whether an employee is probationary or not is heard by the OEA as part of its jurisdiction to examine its own jurisdiction. See *Neves v. Dept. of Pub. Works,* OEA Docket No. JT–0045–91 (Sept. 17, 1991); *Hawkins v. Dept. of Pub. Works,* OEA Matter No. 1601–0090–91 (Nov. 19, 1993). If an employee prevails in showing an erroneous assumption of probationary status, the OEA then proceeds to hear a substantive appeal or offer relief commensurate with career status. See *Sawyer v. Dept. of Corrections,* OEA Matter No. 1601–0142–92 (June 10, 1993). Defendants also claim—and offer rather indirect support for the proposition—that Fox could in the alternative have filed a grievance about his probationary classification directly with the Lottery Board and appealed any rejection to the OEA. *District of Columbia v. Thompson,* 593 A.2d at 624 & n. 15. Thus the District of Columbia seems to provide a forum for the airing of his claim, and Fox,

having denied the forum's very existence, has made no attack on its adequacy.

▮▮▮ Fox does, however, raise a related claim—that the District falsely "instruct[ed] him that he had no appeals" regarding his termination. It is not clear whether Fox ever voiced this complaint to the district court, but the District makes no objection here and so has waived any waiver of the point by Fox. *Belton v. Washington Metro. Area Transit Auth.*, 20 F.3d 1197, 1202 (D.C.Cir.1994). In stating that as a probationary employee he had no right of appeal, and affirmatively noting the procedure for discrimination-based claims, Kinard's letter appears to have been highly misleading.

Here, too, it appears that District law provides an apt remedy for the wrong. Its Code provides that "[e]ach agency shall advise each employee against whom action is taken ... of his or her right to appeal to the [OEA] as provided in this subchapter," 1 D.C.Code § 606.4(e), and § 602.3 of the OEA Rules provides the following:

> When a board ... issues a decision to any employee on a matter appealable to the Office, the ... board ... shall provide to the employee:
>
> (a) Notice of the time limits for appealing to the Office and the address for filing the appeal; ...
>
> (d) Notice of any applicable rights to a grievance procedure....

27 D.C.Reg. 4351–52.

Of course the 15–day period in which Fox could have filed a timely petition with the OEA attacking his firing, OEA Rules § 602.5, 27 D.C.Reg. 4352, is long past. While it may have become clear to Fox through the course of his federal litigation that he appeared to have had a right of administrative appeal that Kinard's letter hadn't mentioned, he may then have relied on his federal action to vindicate that right, supposing that a late appeal to the OEA would have been either futile or duplicative. It would therefore be wrong to reject his

claim on the theory that he had waived his district law remedy by delay. The defendants should not, if Fox's presentation of the facts proves true, be able to end the matter here by raising Fox's delay before the OEA when they, logically and possibly statutorily, are largely responsible for it.[1]

Neither is Fox's claim ripe for trial, however. There is strong reason to believe that the OEA will waive the 15–day limit and therefore avail Fox of the process he claims he is due. See *District of Columbia v. Daniels*, 523 A.2d 569, 571 (D.C.App.1987) (employees who were denied sick leave were entitled to an untimely appeal to the OEA after the employing department erroneously told them there was "no further administrative appeal"); *Montgomery v. District of Columbia*, 598 A.2d 162, 167–68 (D.C.App.1991) (fired teacher who did not pursue required OEA review was entitled to an OEA hearing because she was not notified of her right to appeal).

If the OEA does hear Fox's appeal, it will have mooted Fox's only surviving due process complaints, namely those related to the misleading notice; if the District's procedures afford more process than Fox has claimed, we will not have to answer the question whether the notice given was below due process standards, and (if so) whether its cure requires a tolling of deadlines for pursuit of an administrative hearing. Cf. *Railroad Comm'n of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Justice v. Superior Ct. of the District of Columbia*, 732 F.2d 949 (D.C.Cir.1984) (application of *Pullman* abstention to a District of Columbia law issue); but cf. *Silverman v. Barry*, 727 F.2d 1121, 1123 n. 4 (D.C.Cir.1984) (questioning application of *Pullman* to D.C.). See also *Nelson v. Southeastern Pennsylvania Transportation Auth.*, 420 F.Supp. 1374, 1378–83 (E.D.Pa.1976) (*Pullman* abstention applied to public employee's due process claim when property interest in his job was unclear under state law).

We therefore vacate the district court's judgment on Fox's due process claim. On

---

**1.** The same reasoning applies to any right Fox may have to file a grievance with the Board and appeal any rejection to the OEA.

remand, if Fox indicates that he will attempt to pursue his OEA remedy, the district court should hold the due process part of the case in abeyance until either it becomes moot (or simply empty) through the OEA's having ruled upon Fox's career/probationary status on the merits, or resolution of Fox's due process claim becomes necessary because OEA denies Fox such a hearing due to the untimeliness of his petition. If Fox does not wish to attempt an appeal to the OEA, his due process claim can be deemed abandoned and suitable for dismissal with prejudice.

\* \* \*

The district court's grants of summary judgment and judgment as a matter of law for defendants are vacated, and the case is remanded for proceedings consistent with this opinion.

*So ordered.*