**Violet SERRATO, Plaintiff–Appellant,**

v.

**BOWLING GREEN STATE UNIVERSITY; Joshua Kaplan, Marlene Reynolds; Joanne Navin; Byran Benner, Defendants–Appellees.**

No. 03–3620.

United States Court of Appeals, Sixth Circuit.

Decided July 7, 2004.

Rehearing Denied July 29, 2004.

Thomas A. Sobecki, Toledo, OH, for Plaintiff–Appellant.

Janine Thompson Avila, Tammy Geiger Lavalette, Connelly, Jackson & Collier, Toledo, OH, for Defendants–Appellees.

Before: KEITH and CLAY, Circuit Judges; and OBERDORFER, District Judge.*

* The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

CLAY, Circuit Judge.

Plaintiff appeals the district court's order granting Defendants summary judgment on claims brought pursuant to 42 U.S.C. § 1983 for alleged retaliation in violation of the First and Fourteenth Amendments. Plaintiff contends that the district court erred in determining that her speech in which she reported alleged death threats made against her by a co-worker did not touch upon a matter of public concern. For the reasons set forth below, we **AFFIRM** the district court's order.

## BACKGROUND

### Procedural History

On December 5, 2001, Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Northern District of Ohio, alleging violations by Defendants of her First and Fourteenth Amendment rights to free speech. In their responsive pleading. Defendants asserted that Plaintiff's complaint should be dismissed for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). On February 28, 2002, the district court granted Defendants' motion to dismiss the complaint against them in their official capacities. After a period of discovery, on November 25, 2002, Defendants filed a motion for summary judgment as to Plaintiff's claim against them in their individual capacities. The district court granted Defendants' motion for summary judgment in a written order dated March 24, 2003. Plaintiff then filed a timely appeal with this Court on April 22, 2003.

### Facts

Plaintiff Violet Serrato worked as a full-time clerical specialist at Defendant Bowl-

ing Green State University's ("BGSU's") Student Health Services ("SHS"). In early 1995, Plaintiff and another employee, an individual named Cheryl Schick, were the only applicants for another full-time clerical specialist position at SHS. Deposition testimony from several SHS employees revealed that Schick was angry that Plaintiff was competing with her for the job and remarked publicly that she (Schick) would bring a gun in and kill Plaintiff if Schick did not get the position. It is undisputed that, until Plaintiff learned of the threat Schick made against her. Plaintiff had never filed a grievance or formal complaint against anyone in BGSU. It is further undisputed that on learning of the threat against Plaintiff. Defendant Joshua Kaplan. SHS's medical director, called Schick into his office and Schick admitted to making the statement but stated she did not have a gun and did not mean what she said. Further, Kaplan told Schick he planned on contacting the police regarding the threat and sent Schick home for the day. Plaintiff learned about the threat made against her after hearing Kaplan telling other SHS employees that Schick's threat against Plaintiff was harmless. Plaintiff and her supervisor at the time, Sherry Beeker, expressed concern about their safety, and were told by Kaplan to contact campus security to address their concerns. Plaintiff and Beeker did contact campus security, who referred them to BGSU Human Resources. Plaintiff claims that after she reported her concern to Human Resources, the harassment and retaliation by Defendants begun "and never stopped." (Plaintiff's Br. at 5).

Plaintiff continued to complain. Plaintiff claims Kaplan told her that if she was not happy with how he addressed the situation she could find employment elsewhere. On February 13, 1995, Plaintiff and several of her co-workers at SHS signed a memorandum to Kaplan express-ing their safety concern regarding Schick. Plaintiff claims that while she and other SHS workers expressed safety concerns about Schick's death threat, Kaplan singled her out "for harassment and retaliation." (Plaintiff's Br. at 6). According to Plaintiff, after she underwent a hysterectomy in the latter part of 1996. Kaplan informed her that she could not come back to work on less than a full-time basis, even though other employees who sought medical attention were allowed to return on a part-time basis. Plaintiff asserts that only after she complained to higher authorities did Kaplan permit her to return to work on a part-time basis. She further contends that when Kaplan found out that she supervised several students as part of her responsibilities at SHS. he eliminated the student positions. It is Plaintiff's belief that Kaplan's act of eliminating the student positions was done to adversely affect Plaintiff's work environment because Plaintiff relied heavily on the students to assist with her work. Plaintiff claims that in spite of Schick's death threat against her, Schick was not immediately removed from SHS and on one occasion Schick deliberately "took her shoulder and ran it into [Plaintiff's] left shoulder." (Plaintiff's Br. at 8).

Defendant Joanne Navin replaced Sherry Beeker as Plaintiff's supervisor in 1997; Navin's supervisor was Kaplan. Plaintiff expressed to Navin her concern over the retaliatory treatment she felt she was receiving by Kaplan after she had reported her safety concerns about Schick's threat to Human Resources. When Defendant Marlene Reynolds replaced Navin as clerical supervisor. Plaintiff also expressed to Reynolds her concern about her safety and the retaliatory treatment she felt she was experiencing. Plaintiff contends that Navin ordered her to get back to work when Plaintiff expressed her safety concern to

Navin. Plaintiff further asserts that Reynolds stopped talking to her altogether after Reynolds request for an additional hour a day of part-time help was declined by Kaplan—Reynolds apparently blamed Plaintiff for Kaplan's rejection of her request. Plaintiff voluntarily left SHS in February 2000, citing the recommendation of her physician as the reason for her departure; she remained unemployed for a year until she took another position at BGSU. After returning to BGSU in a new capacity, Plaintiff claims Defendant Bryan Brenner, a BGSU employee, swerved a car in her direction as she crossed a campus street on May 7, 2001. According to Plaintiff, she noticed Brenner in the vehicle "looking straight ahead and [ ] laughing" after he drove by her. (J.A. at 252).

Tonia Stewart was the Associate to the Vice President for Student Affairs at BGSU from July 1994 to July 1997, and Associate Vice President for Student Affairs from July 1997 to June 1999. Stewart was the immediate supervisor of Kaplan in her capacity as Associate Vice President for Student Affairs. In her affidavit, Stewart recommended that Kaplan's contract with BGSU not be renewed because he was retaliating against Plaintiff for expressing concerns about her safety at SHS. The record reveals that Kaplan thought Plaintiff was overreacting to Schick's threat that was not made directly to Plaintiff: therefore. Kaplan only reprimanded Schick, despite the expressed concerns of other SHS workers who feared for their safety because of Schick's threat. According to Plaintiff, Defendants retaliated against her because she spoke out against the threat that was made against her by Schick. The district court found that Plaintiff had not stated a claim for violation of her constitutional right of free speech pursuant to 42 U.S.C. § 1983 and granted Defendants' motion for summary judgment. It is from that disposition that Plaintiff now appeals.

## DISCUSSION

Plaintiff argues that the district court failed to construe the evidence in the record in her favor, contrary to summary judgment principles. Plaintiff contends that had the district court favorably construed the record, it would have held that the individual Defendants violated her First and Fourteenth Amendment rights to free speech by retaliating against her because she expressed concern for her safety in the workplace.

This Court reviews a grant of summary judgment *de novo*. *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir.2004) (citations omitted). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In considering a summary judgment motion, all facts must be viewed in the light most favorable to the party opposing summary judgment. *See id.* Settled principles also dictate that once a movant has satisfied his or her burden demonstrating an absence of evidence supporting the non-movant's case. see *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the non-movant "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

As a threshold matter, we note that to state a claim pursuant to § 1983, Plaintiff must show that she (1) "was deprived of a right secured by the Constitution or laws

of the United States and that (2) the deprivation was caused by someone acting under color of state law." *Perry v. McGinnis,* 209 F.3d 597, 603 (6th Cir.2000) (citing 42 U.S.C. § 1983). To establish a prima facie case for retaliation for exercise of First Amendment rights, Plaintiff must establish that (1) she was engaged in a constitutionally protected activity: (2) that Defendants' adverse action caused her to suffer an injury that would seriously affect a person of "ordinary firmness from continuing to engage in that activity"; and (3) that the adverse action was motivated "at least in part as a response to the exercise of her constitutional rights." *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Cockrel v. Shelby County Sch. Dist.,* 270 F.3d 1036, 1048 (6th Cir.2001) (citing *Leary v. Daeschner,* 228 F.3d 729, 737 (6th Cir.2000)). To satisfy the first *Pickering* prong, a plaintiff must show that (1) his or her speech touched upon matters of public concern; and (2) his or her "interest in commenting on matters of public concern ... outweighs the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731 (citations omitted). Once a plaintiff establishes the three *Pickering* elements, the burden of production shifts to the defendants, who must demonstrate, by a preponderance of the evidence, that they would have taken the same action in the absence of the protected conduct. *Leary,* 228 F.3d at 737 (quotation omitted).

In *Rodgers v. Banks,* 344 F.3d 587, (6th Cir.2003), we observed that "[w]hile public employees may not be required to sacrifice their First Amendment free speech rights in order to obtain or continue their employment ... a state is afforded greater leeway to control speech that threatens to undermine the state's ability to perform its legitimate functions." *Id.* at 596 (internal citations omitted). Speech concerns matters of public concern if it "relat[es] to any matter of political, social, or other concern to the community." *Connick,* 461 U.S. at 146. Stated otherwise, this Court must determine whether the relevant speech "involves issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *Brandenburg v. Hous. Auth. of Irvine,* 253 F.3d 891, 898 (6th Cir.2001) (internal citations omitted). Therefore, speech that touches upon a matter of public concern includes speech that informs the public that the government failed to "discharg[e] its governmental responsibilities" or "bring[ing] to light actual or potential wrongdoing or breach of public trust [on the part of a governmental entity or any officials therein]." *Connick,* 461 U.S. at 148. In distinguishing between speech that touches upon a public concern versus private speech, we have stated that our focus is not on "what might incidentally be conveyed by the fact that the employee spoke in a certain way, [but] the *point* of the speech in question." *Dambrot v. Cent. Mich. Univ.,* 55 F.3d 1177, 1186 (6th Cir. 1995).

In the instant case, the district court applied the foregoing principles and determined that, because Plaintiff's speech concerned an internal dispute. Plaintiff's speech was "the quintessential example of a matter of private concern." (J.A. at 23). We agree with the district court that, as a general matter, purely internal employee grievances are matters of private concern. *See Cockrel,* 270 F.3d at 1052 ("an employee grievance or some other private dispute" generally does not constitute a matter of public concern); *United States v. Nat'l Treasury Employees Union,* 513 U.S. 454, 466, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995) ("speech that involves nothing

**514**

more than a complaint about a change in the employee's own duties [which] may give rise to discipline without imposing any special burden of justification on the government employer" is unprotected speech). Plaintiff relies on this Court's opinion in *Banks v. Wolfe County Board. of Education*, 330 F.3d 888 (6th Cir.2003) for the proposition that Plaintiff's speech touched upon a matter of public concern. In *Banks*, this Court reversed the district court's grant of summary judgment to the defendants in part because the district court focused on the subjective intent of the Plaintiff in making the speech to determine whether the plaintiff's speech touched upon a matter of public concern. The plaintiff in *Banks* challenged the defendants' policies and procedures for hiring certified personnel after she was denied a certified teaching position, despite interviewing for several such positions. *Id.* at 890–91. The plaintiff sent several letters to the state Office of Education Accountability ("OEA") regarding what she perceived to be violations of state policy by the defendants. *Id.* at 891. The plaintiff was eventually transferred to another department allegedly in retaliation for conduct in challenging the defendants' policies and procedures. *Id.* A panel of this Court concluded that, although most of the plaintiff's allegations were personal in nature, "some of her allegations touched upon public concerns." *Id.* at 897.

Despite Plaintiff's efforts to fit the facts of this case within the ambit of *Banks,* we agree with the district court that none of Plaintiff's allegations touch upon a matter of public concern.[1] Unlike the *Banks* plaintiff, Plaintiff in the instant case merely alleges that Defendants' retaliatory treatment of her was based on Plaintiff's personal desire to see Schick dismissed. Plaintiff claims that after she reported her fear to Human Resources, Defendants at various times began to retaliate against her by ignoring her request that something be done about Schick, or by not taking action for the alleged retaliatory treatment she suffered from Kaplan. Plaintiff claims that her statements to Defendants concerned safety precautions at SHS, not a personal vendetta to see Schick and Kaplan disciplined. As the district court correctly noted, however. Plaintiff's statements to Human Resources and Defendants concerned only her desire to see Schick fired and Kaplan disciplined as a result of their treatment of Plaintiff. The letters that the *Banks* plaintiff sent to the OEA set forth allegations regarding policies and procedures at the defendants institution regarding a matter of public concern, making *Banks* unlike the instant case. Because Plaintiff does not sufficiently set forth specific allegations that her speech touched upon a matter of public concern, Plaintiff's speech was not protected speech; therefore, we need not conduct a balancing inquiry pursuant to *Pickering*

---

1. At oral argument, counsel for Plaintiff analogized this case to *Chappel v. Montgomery County Fire Protection District No. 1*. 131 F.3d 564 (6th Cir.1997). *Chappel* is patently distinguishable, however. In *Chappel*, the plaintiff alleged that the defendants retaliated against him because he attended public meetings and voiced concern over the defendants' mismanagement of the finances of the ambulance district. *Id.* at 568. As part of his speech against the defendants, the plaintiff accused officials in defendants' employ of ab- sconding with public funds. A panel of this Court ruled that the plaintiff's speech was a matter of public concern because it concerned use of public funds. In the instant case. Plaintiff's alleged retaliatory treatment came about because she voiced her personal concern about her personal safety and the safety of others. However, Plaintiff's alleged safety concern arose in the context of a personal employment dispute, and the allegations were more personal in nature, and only tangentially concerned public safety.

to determine whether the district court erred in this matter. *See Pickering*, 391 U.S. at 568.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order granting Defendants' motion for summary judgment.

OBERDORFER, J., concurring.

I join in the result affirming the district court's grant of summary judgment for the defendants. Even assuming that Serrato's speech touched on a matter of public concern. I would hold, on the undisputed facts well-stated by the majority, that her First Amendment interest was "outweighed by the interest of the State, as an employer, in promoting the efficiency of the public services it performs," specifically the University Student Health Center's efficiency interest in providing its services to the students. *Chappel v. Montgomery Cty. Fire Protection Dist. No. 1.* 131 F.3d 564, 574 (6th Cir.1997) (internal quotation marks omitted). Although necessarily fact-bound and context-specific, this conclusion is soundly within the line drawn by Supreme Court and Sixth Circuit precedent. *See, e.g. Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir.2000); *see also Fox v. District of Columbia*, 83 F.3d 1491 (D.C.Cir.1996), *on remand*, 990 F.Supp. 13 (D.D.C.1997). On this balancing theory, I join in the decision of my colleagues.