Justice Stevens,
dissenting.
The proper answer to the question “whether the First Amendment protects a government employee from discipline based on speech made pursuant to the employee's official duties,” ante, at 413, is “Sometimes,” not “Never.” Of course a supervisor may take corrective action when such speech is “inflammatory or misguided,” ante, at 423. But what if it is just unwelcome speech because it reveals facts that the supervisor would rather not have anyone else discover?*
*427 As Justice Souter explains, public employees are still citizens while they are in the office. The notion that there is a categorical difference between speaking as a citizen and speaking in the course of one’s employment is quite wrong. Over a quarter of a century has passed since then-justice Rehnquist, writing for a unanimous Court, rejected “the conclusion that a public employee forfeits his protection against governmental abridgment of freedom of speech if he decides to express his views privately rather than publicly.” Givhan v. Western Line Consol. School Dist., 439 U. S. 410, 414 (1979). We had no difficulty recognizing that the First Amendment applied when Bessie Givhan, an English teacher, raised concerns about the school’s racist employment practices to the principal. See id., at 413-416. Our silence as to whether or not her speech was made pursuant to her job duties demonstrates that the point was immaterial. That is equally true today, for it is senseless to let constitutional protection for exactly the same words hinge on whether they fall within a job description. Moreover, it seems perverse to fashion a new rule that provides employees with an incentive to voice their concerns publicly before talking frankly to their superiors.
While today’s novel conclusion to the contrary may not be “inflammatory,” for the reasons stated in Justice Souter’s dissenting opinion it is surely “misguided.”

See, e. g., Branton v. Dallas, 272 F. 3d 730 (CA5 2001) (police internal investigator demoted by police chief after bringing the false testimony of a fellow officer to the attention of a city official); Miller v. Jones, 444 F. 3d 929, 936 (CA7 2006) (police officer demoted after opposing the police chief’s attempt to “us[e] his official position to coerce a financially independent organization into a potentially ruinous merger”); Delgado v. Jones, 282 F. 3d 511 (CA7 2002) (police officer sanctioned for reporting criminal activity that implicated a local political figure who was a good friend of the police chief); Herts v. Smith, 345 F. 3d 581 (CA8 2003) (school district official’s contract was not renewed after she gave frank testimony about the district’s desegregation efforts); Kincade v. Blue Springs, 64 F. 3d 389 (CA8 1995) (engineer fired after reporting to his supervisors that contractors were failing to complete dam-related projects and that the resulting dam might be structurally unstable); Fox v. District of Columbia, 83 F. 3d *427 1491, 1494 (CADC 1996) (D. C. Lottery Board security officer fired after informing the police about a theft made possible by “rather drastic managerial ineptitude”).